In re SUMITOMO COPPER LITIGATION, Plaintiffs Class, Plaintiffs–Appellees,

v.

CREDIT LYONNAIS ROUSE, LTD., and Credit Lyonnais, S.A., Defendants–Appellants,

R. David Campbell, Bipin Shah, Global Minerals and Metals, Inc., Sumitomo Corporation, Sumitomo Corporation of America, Merrill, Lynch & Co., Merrill Lynch Commodity Financing, Inc., Merrill Lynch Pierce Fenner & Smith Incorporated, Merrill Lynch Pierce Fenner & Smith (Brokers & Dealers) Limited, Morgan Stanley & Co., Inc., J.P. Morgan & Co., Inc., and Morgan Guaranty Trust Company of New York, Defendants.

Docket No. 00–8028.

United States Court of Appeals, Second Circuit.

Submitted Sept. 19, 2000.

Decided Aug. 15, 2001.

Christopher Lovell, Lovell & Stewart, LLP, New York, NY, for plaintiffs-appellees.

Philip Allen Lacovara, Steven Wolowitz, Scott E. Mortman, Mayer, Brown & Platt, New York, NY, for defendants-appellants.

Howard Schneider, Joel W. Sternman, James M. Rittinger, Rosenman & Colin LLP, New York, NY, for amicus curiae Futures Industry, Inc.

Before WALKER, Chief Judge,
MINER and POOLER, Circuit Judges.

JOHN M. WALKER, JR., Chief Judge:

This case presents the issue of the circumstances under which leave will be granted to permit an interlocutory appeal from a district court's decision on class certification pursuant to the recently enacted Rule 23(f) of the Federal Rules of Civil Procedure ("Rule 23(f)").

Plaintiffs commenced a class action suit in 1996 against, *inter alia*, Sumitomo Corporation ("Sumitomo"), Morgan Stanley & Co. ("Morgan Stanley"), Merrill Lynch & Co. ("Merrill Lynch"), and Global Minerals and Metals Corporation ("Global"), alleging that the defendants conspired to manipulate the prices of copper futures contracts traded on the COMEX division of the New York Mercantile Exchange from June 24, 1994 through June 15, 1996, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and the Commodity Exchange Act ("CEA"), 7 U.S.C. § 13(a)(2). The United States District Court for the Southern District of New York (Milton Pollack, *Senior Judge*) certified a plaintiffs class consisting of more than 20,000 copper futures contract traders who had executed trades over a discontinuous 27–month period.

Defendants-petitioners Credit Lyonnais Rouse, Ltd. and Credit Lyonnais, S.A. (collectively the "CL defendants") move (1) pursuant to Rule 23(f) and Federal Rule of Appellate Procedure 5, for leave to appeal from that order, and (2) pursuant to Rule 23(f) and Federal Rule of Appellate Procedure 8, for a stay of trial proceedings pending the resolution of such an appeal. The CL defendants were supported by a brief filed by *amicus curiae* Futures Industry, Inc., an industry association of which the CL defendants are members. We denied leave to appeal by an order entered on September 26, 2000, and now take this opportunity to explain that ruling and the standard that we applied and will apply in the future to petitions seeking leave to appeal a district court's grant or denial of class certification under Rule 23(f).

## BACKGROUND

After plaintiffs filed a motion for class certification under Rule 23(b)(3), Sumitomo, Morgan Stanley, and Merrill Lynch entered into settlement agreements with the class plaintiffs.

Global refused to settle and opposed class certification. Specifically, Global contended that (1) the class plaintiffs could not establish the predominance of common issues required by Rule 23(b)(3) because they could not prove that the prices in all of the copper futures contracts at issue

were artificial or that each class plaintiff incurred the same damages; (2) the class plaintiffs had irreconcilable conflicts of interest because the class consists of both buyers and sellers; and (3) typicality was absent because the contracts at issue were purchased at different times during the class period. *See In re Sumitomo Copper Litigation*, 182 F.R.D. 85, 89–95 (S.D.N.Y. 1998) (*"Sumitomo I"*).

In its order certifying the class under Rule 23(b)(3), the district court rejected Global's contentions. The district court determined that common issues predominated because: (1) the class plaintiffs were not required to prove their claims until trial, at which time, experts on both sides agreed, the class plaintiffs had "a reasonable probability" of proving their claims; (2) the question of individual damages was irrelevant to the liability phase of trial and could readily be resolved at the damages phase of trial by splitting the class into various sub-classes as permitted by Rule 23(c)(4)(B); and (3) both buyers and sellers had a common interest in proving the existence of the conspiracy and price artificiality, and any conflicting interests with respect to damages could be resolved through sub-classes in the damages phase of trial. *See id.* The district court also found that typicality was satisfied because "every class member purchased or sold the same fungible copper futures contract in the same centralized Comex market" and was affected by "the same alleged conspiracy to manipulate copper prices." *Id.* at 94–95.

Global thereafter entered into a settlement agreement with the class plaintiffs. The district court approved all the above-noted settlement agreements. *See In re Sumitomo Copper Litigation*, 189 F.R.D. 274, 284 (S.D.N.Y.1999).

After the class was certified, but before these settlements were approved, the class plaintiffs filed an amended complaint adding the CL defendants. In addition to the claims previously asserted, the amended complaint added a common-law fraud claim and extended the class period to include copper futures contract purchases from June 24, 1993 to June 15, 1996. The CL defendants moved to dismiss the amended complaint on the grounds that (a) it failed to state a claim upon which relief could be granted under RICO, and (b) claims arising before April 25, 1995 were barred by the statute of limitations. In denying the motion, the district court held, *inter alia,* that plaintiffs were not foreclosed from proving at trial that the statute of limitations was equitably tolled due to defendants' alleged fraudulent concealment. *See In re Sumitomo Copper Litigation*, 104 F.Supp.2d 314, 323–24 (S.D.N.Y.2000) (*"Sumitomo II"*).

On August 2, 2000, over the CL defendants' opposition, the district court granted plaintiffs' certification motion and certified the proposed class for the periods of June 24, 1993 to September 24, 1993, and June 24, 1994 to June 15, 1996. *See In re Sumitomo Copper Litigation*, 194 F.R.D. 480, 483 (S.D.N.Y.2000) (*"Sumitomo III"*). The district court expressly noted that it would modify the class period if it proved too unwieldy. *Id.* A certification order was entered August 10, 2000. The CL defendants timely filed a petition for leave to appeal on August 24, 2000.[1]

## DISCUSSION

A. Federal Rule of Civil Procedure 23(f)

Federal Rule of Civil Procedure 23(f), which became effective December 1, 1998, provides:

---

**1.** Pursuant to Federal Rule of Civil Procedure 6(a), Rule 23(f)'s ten-day period to file a petition to appeal excludes weekends and holidays.

**Appeals.** A court of appeals may in its discretion permit an appeal from an order of a district court granting or denying class action certification under this rule if application is made to it within ten days after entry of the order. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.

Fed.R.Civ.P. 23(f). According to the committee notes, courts of appeals have "unfettered discretion" to authorize an appeal under Rule 23(f):

> Permission to appeal may be granted or denied on the basis of any consideration that the court of appeals finds persuasive. Permission is most likely to be granted when the certification decision turns on a novel or unsettled question of law, or when, as a practical matter, the decision on certification is likely dispositive of the litigation.

Fed.R.Civ.P. 23(f) committee notes. Although we have recently authorized appeals under Rule 23(f), *see, e.g., Daniels v. City of New York,* No. 01–7649 (2d Cir. May 1, 2001); *Potchin v. Prudential Home,* No. 00–7828 (2d Cir. July 13, 2000), we have yet to explicate the standard under which Rule 23(f) petitions should be reviewed.

The Seventh Circuit, the first to consider the question, identified two categories of cases appropriate for review under Rule 23(f). *See Blair v. Equifax Check Servs., Inc.,* 181 F.3d 832, 834–35 (7th Cir.1999). The first category comprises the so-called "death knell" cases and their counterparts—namely cases in which the class certification order effectively terminates the litigation either because the denial of certification makes the pursuit of individual claims prohibitively expensive or because the grant of certification forces the defendants to settle. *See id.* Noting that the reviewing court "must be wary lest the mind hear a bell that is not tolling," the Seventh Circuit concluded that under circumstances in which the certification order would effectively terminate the litigation the party seeking leave to appeal had to further demonstrate, at a minimum, that "the district court's ruling on class certification is questionable ... taking into account the discretion the district judge possesses in implementing Rule 23, and the correspondingly deferential standard of appellate review." *Id.* at 834–35.

The second category of cases are those in which the class certification order implicates an unresolved legal issue concerning class actions. *See id.* at 835. Observing that "the more fundamental the [legal] question and the greater the likelihood that it will escape effective disposition at the end of the case, the more appropriate is an appeal under Rule 23(f)," the Seventh Circuit concluded that the party seeking leave in such a case had to demonstrate, at a minimum, that an immediate appeal would contribute to the development of the law of class actions. *Id.; see also Richardson Electronics, Ltd. v. Panache Broadcasting of Pa., Inc.,* 202 F.3d 957, 958 (7th Cir. 2000) (noting that immediate appeal is warranted where it "would advance the development of the law governing class actions").

The certification order at issue in *Blair* implicated an unresolved legal issue, namely whether the district court erred in certifying the class when, in a separate overlapping class action suit, the defendant had agreed to settle on the condition that further class action suits would be prohibited. *See Blair,* 181 F.3d at 836–38. Noting that there were no prior cases addressing the issue, the court concluded that it was one that had "evaded appellate resolution [and was] important enough to justify [immediate] review." *Id.* at 838. The Seventh Circuit granted the petition, turned to

the merits of the appeal, and affirmed the class certification order. *See id.* at 838–39.

After the decision in *Blair,* the First and Eleventh Circuits weighed in, agreeing with the Seventh Circuit's standard for discretionary review, but somewhat refining the grounds that would warrant such review. The First Circuit noted that, with respect to the second category of cases, the legal issue had to be "important to the particular litigation as well as important in itself and likely to escape effective review if left hanging until the end of the case." *Waste Mgmt. Holdings, Inc. v. Mowbray,* 208 F.3d 288, 294 (1st Cir.2000). The *Mowbray* court also allowed for the possibility that under certain circumstances, review should be granted even where the petition did not satisfy the requirements of either *Blair* category. *Id.* This was the case with the *Mowbray* petition itself, as to which the First Circuit granted the appeal because the merits of the appeal had, pursuant to court order, "already ... been briefed with exquisite care" and the disposition of the appeal would enable more effective management of the suit by "clarify[ing] some imprecision in the case law." *Id.* at 295.

In *Prado–Steiman v. Bush,* 221 F.3d 1266, 1275 (11th Cir.2000), the Eleventh Circuit held that in a case where the class certification order effectively terminated the litigation, the "mere[ ] demonstrat[ion] that the district court's ruling is questionable ... will be insufficient to support a Rule 23(f) petition in the absence of [some indication that the district court abused its discretion]." But the court also found that its "authority to accept Rule 23(f) petitions is highly discretionary, and the ... list of factors [enunciated] is not intended to be exhaustive; there may well be special circumstances that lead us to grant or deny a Rule 23(f) petition even where some or all of the relevant factors point to a different result." *Id* at 1276. Thus, while the petition in *Prado–Steiman* failed to meet the requirements under either *Blair* category, the Eleventh Circuit allowed the appeal because the certification order implicated public interests of "tremendous importance." *Id.* at 1277–78.

■ In line with our sister circuits, we hold that petitioners seeking leave to appeal pursuant to Rule 23(f) must demonstrate either (1) that the certification order will effectively terminate the litigation and there has been a substantial showing that the district court's decision is questionable, or (2) that the certification order implicates a legal question about which there is a compelling need for immediate resolution.

■ Our determination of whether the district court's decision is sufficiently questionable to warrant interlocutory review will be tempered by our longstanding view that the district court is often in the best position to assess the propriety of the class and has the ability, pursuant to Rule 23(c)(4)(B), to alter or modify the class, create subclasses, and decertify the class whenever warranted. *Cf. Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993) (discussing the broad discretion afforded the district court in class certification questions); *Caridad v. Metro–North Commuter R.R.,* 191 F.3d 283, 291–92 (2d Cir.1999) (noting that this Court is more deferential to the district court whenever class certification is granted), *cert. denied,* 529 U.S. 1107, 120 S.Ct. 1959, 146 L.Ed.2d 791 (2000). As noted by the court in *Prado–Steiman,* interlocutory review is particularly appropriate "when it promises to spare the parties and the district court the expense and burden of litigating the matter to final judgment only to have it inevitably reversed by this Court on appeal after final judgment." *Prado–Steiman,* 221 F.3d at 1274–75. On the other hand,

issues that would result at most in a modification of a certification order or whose ultimate resolution will depend on further factual development will be unlikely candidates for Rule 23(f) appeal. Similarly, we agree with the other circuits that have discussed Rule 23(f) that a novel legal question will not compel immediate review unless it is of fundamental importance to the development of the law of class actions and it is likely to escape effective review after entry of final judgment. *See Mowbray,* 208 F.3d at 294; *Blair,* 181 F.3d at 835. Views expressed by the district court at the time of class certification, although not required, would be relevant to our determination of whether interlocutory appeal is warranted. *See* Fed.R.Civ.P. 23(f) committee notes.

We anticipate, therefore, that the standards of Rule 23(f) will rarely be met. This approach will prevent the needless erosion of the final judgment rule and the policy values it ensures, including efficiency and deference. *See, e.g., Aluminum Co. of Am. v. Beazer E., Inc.,* 124 F.3d 551, 561 (3d Cir.1997) (final judgment rule "minimiz[es] the possibility of piecemeal appeals, accord[s] due deference to trial court judges, and promot[es] the conservation of judicial resources"). In so holding, however, we leave open the possibility that a petition failing to satisfy either of the foregoing requirements may nevertheless be granted where it presents special circumstances that militate in favor of an immediate appeal. *See Prado–Steiman,* 221 F.3d at 1276; *Mowbray,* 208 F.3d at 294 ("[W]e do not foreclose the possibility that special circumstances may lead us either to deny ... or grant leave to appeal."); *Blair,* 181 F.3d at 834 (refusing to adopt a "bright-line" or "catalog of factors" approach).

 Finally, we note that parties should not view Rule 23(f) as a vehicle to delay proceedings in the district court. While the rule gives both the district court and the court of appeals discretion to stay the proceedings, we hold that a stay will not issue unless the likelihood of error on the part of the district court tips the balance of hardships in favor of the party seeking the stay.

## B. Application of Rule 23(f) Standard

The instant case does not meet any of the requirements of Rule 23(f) set forth above.

### 1. Death Knell Review

 We accept, for the purposes of this case, petitioners' assertion that class certification will effectively terminate the litigation because it will force them to settle the case rather than risk trial. We nevertheless find that a death knell review is not warranted because petitioners have failed to make a substantial showing that the district court's decision to grant certification is questionable.

In their petition, the CL defendants contend that the certification order is questionable because: (1) the unprecedented length of the class period in the commodities market context makes it "inconceivable that common questions can predominate and that such claims can be tried in a manageable manner"; (2) the language used in the certification order indicates that the district court impermissibly relied on forced settlement as a basis for finding the class manageable; (3) the determination of whether each class plaintiff incurred an injury "requires highly individualized proof, necessarily focusing on a determination of the level of price artificiality (if any) at the moments each class member opened and closed a futures position"; (4) the class plaintiffs must prove that the CL defendants' conduct at each of those moments was the cause of an ar-

tificial price level; (5) no predominating common issues exist because buying and selling class members have inherently conflicting interests; and (6) the district court failed to make specific findings about the predominating common issues and explain "how plaintiffs' claims could be tried manageably to a verdict."

The CL defendants have overstated their case. Taking the last point first, they suggest that the district court's decision is questionable because it failed sufficiently to justify the certification at issue. The district court, however, relied extensively on its earlier certification order in which it had already considered and rejected many of the arguments raised by the CL defendants in responding to Global's previous opposition to class certification. *See Sumitomo III*, 194 F.R.D. at 482–83 (citing *Sumitomo I*, 182 F.R.D. at 89–95). The district court identified three common issues that would predominate in the case: (a) "the existence *vel non* of the alleged conspiracy"; (b) whether "the conspiracy caused artificial prices to exist"; and (c) "the amount of artificiality." *Sumitomo I*, 182 F.R.D. at 90, 93; *see Sumitomo III*, 194 F.R.D. at 483. In so holding, the district court rejected the argument that commonality was defeated by the possibility that the proof required to demonstrate "injury" might be highly individualized or that the plaintiffs class may have conflicts of interest with respect to damages. *See Sumitomo I*, 182 F.R.D. at 90–94 (citing *Green v. Wolf*, 406 F.2d 291, 299–301 (2d Cir.1968)); *Sumitomo III*, 194 F.R.D. at 483; *cf. Robidoux*, 987 F.2d at 936 ("Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove defendant's liability.").

Similarly, the district court had previously considered and rejected the argument that class plaintiffs had to demonstrate at the moment of certification that price artificiality could be proved at trial, reasoning that the ability to prove artificiality "is a matter to be ascertained by trial and not for a determination as to the appropriateness of class certification." *See Sumitomo I*, 182 F.R.D. at 91; *see also Caridad*, 191 F.3d at 291–92 (concluding that the class plaintiffs' difficulty in actually proving claims at trial does not defeat class commonality for certification purposes).

Also lacking in merit is the CL defendants' contention that the district court's decision is questionable because it impermissibly relied on forced settlement as a basis for finding the class manageable. The CL defendants base their argument on the district court's statement in its August 10, 2000 certification order that

> [t]his Court has considered all of the objections of the CL defendants regarding the manageability of maintaining this action as a class action. The Court reduces the class proposed by plaintiffs by nine months in length, and finds the Class defined in paragraph 1 of this Order to be manageable. *In re Sumitomo Copper Litigation, supra*, 182 F.R.D. at 97 (this Court earlier certified a two year class which was thereafter extensively prosecuted, settled, notice was sent to the class, and final judgment was entered without any management difficulties).

August 10, 2000 Order at 5. In its opinion granting the motion for class certification, however, the district court acknowledged that the CL defendants "raise an arguable question [as to] the matter of manageability." *Sumitomo III*, 194 F.R.D. at 483. In response, the district court narrowed the class period by nine months and expressed a readiness to alter the certification order if that period became unmanageable. *Id.*

When read together, the district court's opinion and order demonstrate that the district court did not rely on forced settlement as a basis for finding manageability, but rather intended to proceed with trial and to modify the class or class period if and when difficulties arose.

### 2. Compelling Question of Law

 The CL defendants also argue that leave to appeal from the certification order should be granted because there are questions of law about which there is a compelling need for immediate resolution. Specifically, they claim that the district court erred in certifying the class because: (1) the "presumption of reliance under the fraud-on-the-market theory" cannot be maintained with respect to the common-law fraud claims in light of *Securities Investor Protection Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 71–73 (2d Cir.2000) (declining to apply the theory of "fraud on the regulatory process" to New York common-law fraud claim); and (2) the claims that occurred prior to April 29, 1995 are time-barred. For several reasons, we are not persuaded that either issue warrants interlocutory review. First of all, the CL defendants have failed to demonstrate why these two legal questions cannot be fully reviewed on appeal from the final judgment—a circumstance that, alone, establishes an adequate basis to deny the petition.

The CL defendants' assertion that the theory of "fraud on the market" cannot be used to satisfy the reliance requirement of a common-law fraud claim under New York law appears to present an open question. Our research indicates that the New York Court of Appeals has never addressed the issue while New York's lower courts have come to different conclusions. *Compare Ackerman v. Price Waterhouse*, 252 A.D.2d 179, 683 N.Y.S.2d 179, 191–92 (App. Div 1st Dep't 1998) (applying presumption of reliance in negligent misrepresentation case involving material omissions); *Weinberg v. Hertz Corp.*, 116 A.D.2d 1, 499 N.Y.S.2d 693, 696 (App. Div. 1st Dep't 1986) (holding in consumer fraud case that "once it has been determined that the representations alleged are material and actionable, thus warranting certification, the issue of reliance may be presumed, subject to such proof as is required on the trial"), *aff'd*, 69 N.Y.2d 979, 516 N.Y.S.2d 652, 509 N.E.2d 347 (1987); *Stellema v. Vantage Press, Inc.*, 109 A.D.2d 423, 492 N.Y.S.2d 390, 393 (App. Div. 1st Dep't 1985) (same); *Brandon v. Chefetz*, 106 A.D.2d 162, 485 N.Y.S.2d 55, 59 (App. Div. 1st Dep't 1985) (same) *with Strauss v. Long Island Sports, Inc.*, 60 A.D.2d 501, 401 N.Y.S.2d 233, 237 (App. Div. 2d Dep't 1978) (noting that although presumption of reliance is applicable to affirmative misrepresentations in federal 10b–5 securities cases, "10b–5 cases are very much distinguishable from common-law fraud cases").[2]

---

**2.** Federal district courts applying New York law have also differed on the question. *Compare In re Blech Secs. Litig.*, 961 F.Supp. 569, 587 (S.D.N.Y.1997) (holding that while "a fraud on the market theory is not available in [common law] cases alleging misrepresentations or omissions," it is available "in the context of market manipulation" where a "plaintiff allege[s] reliance on the integrity of the market"); *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 552 F.Supp. 332, 336–37 (S.D.N.Y.1982) (in the absence of clear guidance from New York courts, applying presumption of reliance in common-law fraud claim for market manipulation) *with In re Motel 6 Secs. Litig.*, 1997 WL 154011, at *5–*6 (S.D.N.Y. Apr.2, 1997) (dismissing common-law fraud claim for failure to allege actual, direct reliance, and finding fraud on the market inapplicable); *Turtur v. Rothschild Registry Int'l, Inc.*, 1993 WL 338205, at *6–*7 (S.D.N.Y. Aug.27, 1993) (noting that common-law fraud case required proof of actual, direct reliance). The only Second Circuit case that

While the uncertainty of this issue tips in favor of a grant of interlocutory review, we decline to do so because the issue is insufficiently connected to the district court's certification order. *See Carter v. West Publ'g Co.*, 225 F.3d 1258, 1262 (11th Cir.2000) ("Rule 23(f) limits . . . review to the district court's order granting [or denying] class certification."). Even if the CL defendants were to prevail on the issue, it would not alter the district court's grant of certification with respect to the plaintiffs' RICO and CEA claims, *see In re Motel 6 Secs. Litig.*, 1997 WL 154011, at *3 (S.D.N.Y. Apr.2, 1997) (noting that actual reliance is not required for a RICO claim alleging securities violations), and arguably would not alter the district court's grant of certification with respect to the common-law fraud claim, *see, e.g., King v. Club Med, Inc.*, 76 A.D.2d 123, 430 N.Y.S.2d 65, 67–68 (App. Div. 1st Dep't 1980) (finding that issues of reliance should not ordinarily defeat class certification and collecting cases).

We also decline to review the CL defendants' contention that portions of plaintiffs' claims are barred by the statute of limitations. The district court held that the issue of whether the limitations period was tolled by the defendants' alleged fraudulent concealment was a factual issue to be determined at trial. *See Sumitomo III,* 194 F.R.D. at 482–83; *see also Sumitomo II,* 104 F.Supp.2d at 322–24. We ordinarily defer to such rulings by a district court. Moreover, as with the reliance claim, any decision by us that the earlier claims were time-barred would result at most in a modification of the district court's certification order.

## CONCLUSION

Upon consideration of the present petition, we conclude that the CL defendants have failed either to make a substantial showing that the district court's certification order is questionable to warrant a death knell review or to demonstrate that the decision implicates a legal question about which there is a compelling need for immediate resolution, and have otherwise failed to persuade us that an immediate appeal is necessary. Accordingly, we deny the petition for leave to appeal and deny as moot the motion for a stay.

discusses the issue is *BDO Seidman,* upon which the CL defendants rely. *See* 222 F.3d at 71–73. In declining to apply a "fraud on the regulatory process" theory to a common-law claim of fraud, the court noted in dicta that New York courts had not adopted the closely related fraud on the market theory. *Id.*