RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0403P (6th Cir.)
File Name: 02a0403p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

In re: DELTA AIR LINES;
NORTHWEST AIRLINES CORP.;
NORTHWEST AIRLINES, INC.;
US AIRWAYS GROUP, INC.;       No. 02-0105
US AIRWAYS, INC.,
               *Petitioners*.

Filed: November 21, 2002

Before: KEITH, MOORE, and GILMAN, Circuit Judges.

———————

## ORDER

———————

PER CURIAM. The district court certified a plaintiff class in this antitrust action that challenges certain airline ticketing practices. Pursuant to Fed. R. Civ. P. 23(f), the defendants filed with this court a petition for permission to appeal that decision. The plaintiffs oppose such an appeal. For the reasons that follow, the petition to appeal is **DENIED**.

### I. FACTS

The plaintiffs claim that they were overcharged for air travel as a result of prohibitions against "hidden-city ticketing." In these consolidated antitrust actions, they sued Northwest Airlines Corp., Delta Air Lines, US Airways, Inc., and US Airways Group. Also named as a defendant is Airline

1

Reporting Corporation (ARC), a trade group formed by the major airlines.  The plaintiffs claim that the defendants have violated both §§ 1 and 2 of the Sherman Act, 15 U.S.C. § 1 *et seq*.

As described by the district court, the practice of hidden-city ticketing occurs when "a passenger who wishes to travel to or from one of the Airlines' hub airports is able to obtain a cheaper fare by purchasing a 'spoke-hub-spoke' ticket that encompasses the desired 'hub-spoke' routes, and then simply discard[s] the unused portion of the ticket."  In the most commonly cited example, a person who wants to travel from New York (city A) to Detroit (city B) discovers this ticket is more expensive than a ticket sold by the same airline from New York to Columbus (city C) with a stop in Detroit — the "hidden city".  To save money, the traveler buys the A-B-C ticket, deplanes at city B, and discards the remainder of the ticket.

Although such ticketing was tolerated for some time, in recent years the airlines have found various means to prohibit the practice.  The plaintiffs allege that the defendant airlines and ARC acted in concert to restrain trade by adopting policies against hidden-city ticketing (the § 1 claims).  They further allege that each airline exercised monopoly powers at its respective hub cities by adopting policies against hidden-city ticketing (the § 2 claims).

Following extensive discovery, the parties filed a number of motions.  The defendants separately moved for dismissal of the plaintiffs' complaint for failure to state a claim.  Those motions were substantially denied by an order dated April 23, 1999.  The district court also denied motions to certify its order for appeal pursuant to Fed. R. Civ. P. 54(b) and 28 U.S.C. § 1292(b).  The defendants later moved to strike the testimony offered by the plaintiffs' proposed experts pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  The district court conducted a *Daubert* hearing and denied the motion to strike. The defendants then moved for summary judgment, and the plaintiffs moved for

The issues on which the defendants seek appeal cannot easily be isolated in the context of an appeal limited to class certification issues.  We therefore conclude that an appeal at this juncture of the litigation would not serve the purposes envisioned by Rule 23(f).  The petition for permission to appeal the class certification decision is thus **DENIED**.

ENTERED BY ORDER OF THE COURT

/s/ Leonard Green

_____
Clerk

is not appropriate.  *See Sumitomo*, 262 F.3d at 140 ("issues . . . whose ultimate resolution will depend on further factual development will be unlikely candidates for Rule 23(f) appeal.")  An interlocutory review of the class certification decision will entangle the merits of the case, which involve the characterization of the monopoly and relevant markets, with the more routine consideration of class certification factors, which involve commonality and typicality.  We are not inclined to extend the jurisdiction conferred by Rule 23(f) in this direction.

The defendants also argue that the district court erred in accepting a theory of generalized proof of injury for both the § 1 and § 2 claims.  In concluding that the claims of the plaintiff representatives met the typicality and commonality requirements of Rule 23, the district court held that the plaintiffs could demonstrate a widespread class injury.  This could be shown by proof that the plaintiffs would have purchased hidden-city tickets but for the defendants' prohibitions and that the practice would have been widespread but for the defendants' actions.  It would not be necessary for each member of the class to make this demonstration, said the district court, and thus this factor would not defeat certification of a class.

The roots of this holding also trace back to the district court's determination to allow the plaintiffs to proceed on the hub-based theory.  A consideration of these issues would entail evaluation of earlier decisions of the district court.  The same can be said of the defendants' assertion that each plaintiff must demonstrate particularized damages.  The district court simply concluded that, for the class certification decision, it "need not determine precisely the procedure through which it will resolve any individualized issues of damages that might remain after the common questions of liability and antitrust impact have been addressed."  An issue not fully developed is generally not an issue for interlocutory appellate review.

certification of a plaintiff class.  In a comprehensive order, the district court addressed both the defendants' motion for summary judgment and plaintiffs' motion for class certification.

In support of the § 1 restraint-of-trade claim, the plaintiffs relied on evidence suggesting that the defendant airlines embraced a theory that the purchase of a hidden-city ticket was a fraudulent customer practice.  Following a rather lengthy discussion of the evidence thus far produced, the district court denied the defendants' motion for summary judgment on the § 1 claims.

With respect to the § 2 monopoly claims, the defendants argued the plaintiffs had not identified any anticompetitive or exclusionary conduct and that an individual airline's hidden-city prohibition affects only that airline's fare structure but does not exclude competition.  According to the plaintiffs' theory, the hidden-city prohibition tended to impede competitive forces that would otherwise have constrained air fares.  Without those restrictions, the plaintiffs contended, a passenger could select among hub-spoke and spoke-hub-spoke fares.  The court found that expert testimony sufficiently supported this theory so as to create an issue of fact.  Accordingly, the defendants' motion for summary judgment on the § 2 claims was denied.

Having denied the defendants' summary judgment motion, the court turned to the plaintiffs' request to certify a class, stating:

First, with regard to Plaintiffs' request for an order enjoining Defendants from enforcing their prohibitions on hidden-city ticketing, Plaintiffs seek certification of a class consisting of all persons or entities who will purchase a ticket from one of the Airline Defendants for travel originating or terminating at one of these Airlines' hub airports. Second, Plaintiffs move for certification of a class under their Section 1 antitrust conspiracy theory, with this class consisting of all persons or entities who purchased an unrestricted full-fare ticket from one of the

Airline Defendants for travel on an "Affected City-Pair" route — namely, some (but not all) of the routes originating or terminating at one of Defendants' hub airports. Third, for each of Plaintiffs' Section 2 antitrust claims against the three individual Airline Defendants, Plaintiffs request certification of a subclass of persons or entities who purchased an unrestricted full-fare ticket from the relevant Airline for travel on an 'Affected City-Pair' route, excluding any shared hub-to-hub routes.

By granting this motion, the district court certified (1) a broad plaintiff class for injunctive relief; (2) a plaintiff class for purposes of the § 1 antitrust conspiracy theory; and (3) as yet undesignated plaintiff subclasses for each of the § 2 antitrust claims relating to the exercise of monopoly power.

The district court found that all four prerequisites of Fed. R. Civ. P. 23(a) for certifying a class had been met, and the court rejected the defendants' objections with respect to the commonality of the issues presented and the typicality of claims. As to the § 1 claim, the court found a common issue in whether the defendants had agreed upon a course of action. With respect to the § 2 claims, the district court accepted the plaintiffs' view that a hub-based monopoly could support a claim, but the court noted that the determination of whether the monopoly was established ultimately rested with the fact-finder.

The prerequisites of Rule 23(a) having been met, the district court then held that all relief could be pursued under subsection (b)(3). Finally, the court rejected the defendants' arguments that the certification of a class would make the litigation unmanageable. The defendants' argument that the plaintiffs' hub-dominated market analysis should be rejected was a defense common to all claims, said the court, and thus supported certification of a class.

## IV.  THE INSTANT PETITION

In the instant case, the class damages sought by the plaintiffs are nearly $1 billion.  This potential liability, suggest the defendants, creates "undue pressure" to settle. The defendants make general reference to the undeniably troubled economic times for the airline industry.   The magnitude of damages is relative to the size of the defendant, or as the *Mowbray* court put it, "what might be 'ruinous' to a company of modest size might be merely unpleasant to a behemoth . . . ." *Mowbray*, 208 F.3d at 294.  Although the instant lawsuit is probably more than a mere unpleasantry, the impact of the class certification alone does not support an appeal.  Nor are we entirely convinced that, in the absence of an immediate appeal, these defendants will have no recourse but to settle.

In any event, much of the defendants' argument with respect to the class certification decision arises from their disagreement with the district court's earlier rulings on the motions to dismiss and for summary judgment.  They argue that the district court erroneously relied upon the plaintiffs' characterization of the relevant markets as hub-based rather than treating the monopoly as involving 234 distinct city-pair routes. This difference, they say, cuts against the showings of commonality and typicality necessary to certify a class. However, the district court's characterization of the markets this way in the class certification decision is closely tied to its decision not to weigh, at this stage of the litigation, the conflicting opinions of the experts.  In certifying the class, the court accepted the notion of subclasses and left open for future consideration whether there is a plaintiff class representative for travelers from each and every hub.

We believe these issues to be so enmeshed with the merits of the case as to disfavor immediate review.  A Rule 23(f) appeal should avoid mixing the merits of the case with the class certification issues.  *See Lorazepam*, 289 F.3d at 107. Further, the certification of subclasses may be revisited at some point in the future, suggesting that interlocutory review

a barrier that later review is hampered. If the class certification decision essentially tells the tale of the litigation, there is strong support for interlocutory review. However, the discussion of this factor must go beyond a general assertion. A plaintiff should demonstrate to the court of appeals why he or she could not pursue the individual claim; a defendant also should provide the court insight into potential expenses and liabilities. A petitioner who convincingly establishes such an impact must further demonstrate some likelihood of success in overturning the class certification decision.

The case that raises a novel or unsettled question may also be a candidate for interlocutory review. *See* Advisory Committee Notes. It is logical that this factor weigh more heavily in favor of review when the question is of relevance not only in the litigation before the court, but also to class litigation in general. *See Prado-Steiman*, 221 F.3d at 1276; *Mowbray*, 208 F.3d at 294.

The weakness of the district court's decision or, stated another way, the likelihood of the petitioner's success on the merits is a factor in any request for a Rule 23(f) appeal. This consideration figures most prominently in cases in which the petitioner argues that, without an immediate appeal, the question may evade review. Where the petitioner seeks review of a novel and important question, success on the merits may take a diminished role. *See Blair*, 181 F.3d at 835.

Finally, the posture of the case as it is pending before the district court is of relevance. For example, an indication that the district court will reexamine the certification decision following discovery should discourage an interlocutory appeal. In the same vein, an appeal under Rule 23(f) should be limited to review of class certification issues. *See, e.g., McKowan Lowe & Co. v. Jasmine, Ltd.*, 295 F.3d 380, 390 (3d Cir. 2002). The Rule 23(f) appeal should not become a vehicle for early review of a legal theory that underlies the merits of a class action.

The defendants' instant petition for permission to appeal the class certification decision was timely filed.

## II.  US AIRWAYS'S CHAPTER 11 PROCEEDINGS

After this petition was filed, defendants US Airways, Inc., and US Airways Group, Inc., filed for bankruptcy relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* We take note of this fact pursuant to entries upon the district court's official docket.

A petition in bankruptcy operates as a stay against "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor . . . ." 11 U.S.C. § 362(a)(1). To determine whether a proceeding is "against the debtor," the court examines the posture of the case as it existed in the district court. *Cathey v. Johns-Manville Sales Corp.*, 711 F.2d 60, 62 (6th Cir. 1983) (holding that the initial status of the debtor as a defendant triggers the stay under § 362(a)). In the absence of unusual circumstances, the automatic stay does not halt proceedings against solvent codefendants. *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 314 (6th Cir. 2000), *cert. denied*, 533 U.S. 951 (2001); *Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1198 (6th Cir. 1983).

This authority suggests an appeal by US Airways cannot proceed in the absence of relief from the automatic stay. Nevertheless, the instant petition to appeal is also brought by solvent codefendants of the debtor, and we are obliged to consider it.

## III.  FEDERAL RULE OF CIVIL PROCEDURE 23(f)

Effective December 1, 1998, Rule 23(f) provides as follows:

(f) Appeals. A court of appeals may in its discretion permit an appeal from an order of a district court granting or denying class action certification under this rule if application is made to it within ten days after entry of the

order.  An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.

Pursuant to this rule, "[t]he court of appeals is given unfettered discretion whether to permit the appeal, akin to the discretion exercised by the Supreme Court in acting on a petition for certiorari."  Fed. R. Civ. P. 23(f) Advisory Committee Notes (1998).  The Committee contemplated that "[t]he courts of appeals will develop standards for granting review that reflect the changing areas of uncertainty in class litigation."  *Id.*  "[P]ermission to appeal may be granted or denied on the basis of any consideration that the court of appeals finds persuasive," but "is most likely to be granted when the certification decision turns on a novel or unsettled question of law, or when, as a practical matter, the decision on certification is likely dispositive of the litigation."  *Id.*

We have allowed an appeal of a class certification decision under Rule 23(f).  *See Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443 (6th Cir. 2002).  In light of an increasing number of such petitions being filed with this court, we now believe it appropriate to consider in more detail the circumstances in which such an appeal should be allowed.

### A.

Rule 23(f) was first considered in *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832 (7th Cir. 1999).  The *Blair* court noted that in determining whether to accept an appeal under Rule 23(f), "[n]either a bright-line approach nor a catalog of factors would serve well — especially at the outset, when courts necessarily must experiment with the new class of appeals."  *Blair*, 181 F.3d at 834.  Rather than creating standards, the court discussed three broad types of cases in which it makes sense to grant interlocutory review. First, said the court, the denial of a plaintiff class sometimes defeats the case as a practical matter because the stakes are too small and the litigation costs are too high for the individual plaintiff to go forward.  Rule 23(f) would permit an appeal in such a "death-knell" case, although *Blair* cautioned that courts of

any pertinent factor may be weighed in the exercise of that discretion.  At the same time, not all factors can be foreseen or stated with particularity.  Like the courts that have spoken on the issue, we eschew any hard-and-fast test in favor of a broad discretion to evaluate relevant factors that weigh in favor of or against an interlocutory appeal.

Second, the Rule 23(f) appeal is never to be routine.  The sheer number of class actions and the unfortunately lengthy period necessary to complete an appeal weigh against permitting interlocutory appeals of class certification decisions in ordinary cases, which involve the application of well-established standards to the facts of a particular case. *See Mowbray*, 208 F.3d at 294 (looking to factors beyond the class certification decision's correctness in determining whether to permit a Rule 23(f) appeal); *Prado-Steiman*, 221 F.3d at 1275-76 ("We reiterate, however, that a class certification decision which 'turns on case-specific matters of fact and district court discretion,' Comm. Note, Fed. R. Civ. P. 23 — as most certification decisions indisputably do — generally will not be appropriate for interlocutory review.").

Finally, some assessment of the merits of a class certification decision must weigh into the initial determination of whether to grant the interlocutory appeal. This factor may be of greater or lesser significance, depending on other factors in the case, but it is always relevant.  And, in examining a petitioner's likelihood of succeeding on the merits of an appeal, it should be remembered that the standard of review is whether the district court committed an abuse of discretion.  *Coleman*, 296 F.3d at 446.  This deferential standard of review supports the notion that Rule 23(f) appeals will be the exception, not the norm.

The specific relevant factors articulated by our sister circuits will also guide our consideration of a petition to appeal under Rule 23(f).  The "death-knell" factor, as discussed in the Advisory Committee Notes, and *Blair* in particular, is a recognition that the costs of continuing litigation for either a plaintiff or defendant may present such

In *Newton v. Merrill Lynch, Pierce, Fenner & Smith*, 259 F.3d 154, 165 (3d Cir. 2001), the Third Circuit noted the difficulty in predicting all of the permutations that a Rule 23(f) petition could involve. However, the court suggested that it would be appropriate to grant an appeal under Rule 23(f) if such an appeal would allow the court to address "(1) the possible case-ending effect of an imprudent class certification decision (the decision is likely dispositive of the litigation); (2) an erroneous ruling; or (3) facilitate development of the law on class certification." *Id.* These circumstances support an appeal, said the court, but do not circumscribe the court's discretion.

Finally, the District of Columbia Circuit addressed Rule 23(f) earlier this year in *In re Lorazepam & Clorazepate Antitrust Litigation*, 289 F.3d 98 (D.C. Cir. 2002). That court concluded that a Rule 23(f) appeal will ordinarily be appropriate in three situations:

> (1) when there is a death-knell situation for either the plaintiff or defendant that is independent of the merits of the underlying claims, coupled with a class certification decision by the district court that is questionable, taking into account the district court's discretion over class certification; (2) when the certification decision presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review; and (3) when the district court's class certification decision is manifestly erroneous.

*Id.* at 99-100. Like the other courts before it, the *Lorazepam* court indicated that Rule 23(f) petitions should be rarely granted, but it was hesitant to formulate and apply a rigid test for such appeals.

## B.

We discern several shared premises in the other circuits' thorough discussions of Rule 23(f). First, a court of appeals has broad discretion to grant or deny a Rule 23(f) petition, and

appeals "be wary lest the mind hear a bell that is not tolling." *Id.* And, even when the denial of a class certification is fatal, the plaintiff should have a "solid argument" in opposition to the district court's decision. *Id.*

In "a mirror image of the death-knell situation," *id.* at 835, *Blair* cited the case in which the certification of a plaintiff class places undue pressure on the defendant to settle. In such a case, "[m]any corporate executives are unwilling to bet their company that they are in the right in big-stakes litigation, and a grant of class status can propel the stakes of a case into the stratosphere." *Id.* at 834. Yet even then "the appellant must demonstrate that the district court's ruling on class certification is questionable." *Id.* at 835. No matter how dramatic the effect of a grant or denial of class status, said the court, "if the ruling is impervious to revision there's no point to an interlocutory appeal." *Id.*

The third type of case, suggests *Blair*, involves "fundamental issues" in class litigation that may be "poorly developed." *Id.* When such an issue is involved, "the more fundamental the question and the greater the likelihood that it will escape effective disposition at the end of the case, the more appropriate is an appeal under Rule 23(f)." *Id.* In such a case, "[w]hen the justification for interlocutory review is contributing to development of the law, it is less important to show that the district judge's decision is shaky." *Id.* The *Blair* court concluded that it was presented with a case of the third sort, because the defendant-appellant argued that the class certification was precluded by the settlement terms of another class action. *Id.* at 837-38. The court granted leave to appeal and affirmed the district court's certification of a plaintiff class.

Following *Blair*, other circuits began to weigh in on Rule 23(f). In *Waste Management Holdings, Inc. v. Mowbray*, 208 F.3d 288, 294 (1st Cir. 2000), the First Circuit pronounced *Blair*'s "taxonomy as structurally sound." However, concerned that the third *Blair* category would encourage "fruitless" Rule 23(f) applications, *Mowbray* offered a "small emendation" to *Blair*:

> *Blair's* third category should be restricted to those instances in which an appeal will permit the resolution of an unsettled legal issue that is important to the particular litigation as well as important in itself and likely to escape effective review if left hanging until the end of the case.

*Id.* However, the *Mowbray* court would "not foreclose the possibility that special circumstances may lead us either to deny leave to appeal in cases that seem superficially to fit into one of these three pigeonholes, or conversely, to grant leave to appeal in cases that do not match any of the three described categories." *Id.*

In *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1273 (11th Cir. 2000), the Eleventh Circuit described *Blair* and *Mowbray* as "cogent explications of the Rule 23(f) inquiry." *Prado-Steiman* went on to emphasize the burgeoning federal docket of class actions and the deference that courts of appeals should give to district court case management. The court articulated five "guideposts" that it would use in determining whether to grant an interlocutory Rule 23(f) appeal. *See id.* at 1274-76. First, and of most importance, said the court, is the "death- knell" consideration mentioned above, *i.e.*, whether the certification ruling is likely to be dispositive of the litigation for either the plaintiff or the defendant. *Id.* at 1274. The second guidepost is "whether the petitioner has shown a *substantial* weakness in the class certification decision, such that the decision likely constitutes an abuse of discretion." *Id.* Third, the court of appeals should consider "whether the appeal will permit the resolution of an unsettled legal issue that is important to the particular

litigation as well as important in itself." *Id.* at 1275 (quotation omitted). Fourth, consideration should be given to the litigation's nature and status, including the status of discovery, before the district court. Finally, the "court should consider the likelihood that future events may make immediate appellate review more or less appropriate." *Id.* at 1276. The list was not exhaustive, said the court, and the factors were not conclusive. Each consideration "should be balanced against the others, taking into account any unique facts and circumstances." *Id.* at 1276.

The *Prado-Steiman* guideposts were adopted as a "five-factor 'sliding scale' test" in *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 141 (4th Cir. 2001). *Lienhart* said it would examine the weakness of the district court's class certification decision on a sliding scale in conjunction with the other factors. *Id.* at 145-46. In other words, the greater the likelihood of reversal of the class certification decision under an abuse of discretion standard, the less a petitioner need show with respect to the other factors. *See id. Lienhart* accepted the appeal before it because the class certification in that case was "manifestly erroneous." *Id.* at 146.

In line with the above cases, the Second Circuit stated:

> [P]etitioners seeking leave to appeal pursuant to Rule 23(f) must demonstrate either (1) that the certification order will effectively terminate the litigation and there has been a substantial showing that the district court's decision is questionable, or (2) that the certification order implicates a legal question about which there is a compelling need for immediate resolution.

*Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001). *Sumitomo* noted that issues that would result at best in a modification of a certification order or the resolution of which depends on further factual developments are not good candidates for a Rule 23(f) appeal. *Id.* at 140.