RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0358p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

IN RE: HUMANA, INC.,

                *Petitioner.*       No. 25-0502

On Petition for Permission to Appeal.

United States District Court for the Western District of Kentucky at Louisville;
No. 3:22-cv-00329—Rebecca Grady Jennings, District Judge.

Decided and Filed:  December 30, 2025

Before:  BATCHELDER, STRANCH, and BLOOMEKATZ, Circuit Judges.

———————————

**COUNSEL**

———————————

**ON PETITION FOR PERMISSION TO APPEAL:**  Michael P. Abate, Burt A. (Chuck) Stinson, KAPLAN JOHNSON ABATE & BIRD LLP, Louisville, Kentucky, K. Cassandra Carter, DINSMORE & SHOHL LLP, Cincinnati, for Petitioner.  **ON RESPONSE:**  James S. Wertheim, Michael Hartmere, Brittany Clark, THE HQ FIRM, P.C., West Jordan, Utah, for Respondent.

———————————

**ORDER**

———————————

Defendant Humana, Inc. petitions for permission to appeal a district court order certifying a class in this action alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  Plaintiff David Elliot opposes the petition.

Federal Rule of Civil Procedure 23(f) authorizes circuit courts to "permit an appeal from an order granting or denying class-action certification." We have "unfettered discretion whether to permit the appeal, akin to the discretion exercised by the Supreme Court in acting on a petition for certiorari." Fed. R. Civ. P. 23(f) advisory committee notes to 1998 amendment. Still, "the Rule 23(f) appeal is never to be routine." *In re Delta Air Lines*, 310 F.3d 953, 959 (6th Cir. 2002) (per curiam). "[W]e eschew any hard-and-fast test in favor of a broad discretion to evaluate relevant factors that weigh in favor of or against an interlocutory appeal." *Id.*

Four factors guide our consideration of a Rule 23(f) petition. *See id.* at 960. First, "the likelihood of the petitioner's success on the merits is a factor in any request for a Rule 23(f) appeal." *Id.* "[I]n examining a petitioner's likelihood of succeeding on the merits of an appeal, . . . the standard of review is whether the district court committed an abuse of discretion." *Id.* "A district court abuses its discretion when it relies on a clearly erroneous factual determination, applies the wrong legal standard, misapplies the correct one, or makes a clear error of judgment." *In re Ford Motor Co.*, 86 F.4th 723, 727 (6th Cir. 2023) (per curiam). Second, "[t]he 'death-knell' factor . . . recogni[zes] that the costs of continuing litigation for either a plaintiff or defendant may present such a barrier that later review is hampered." *In re Delta Air Lines*, 310 F.3d at 960. "[T]he discussion of this factor must go beyond a general assertion." *Id.* Third, "[t]he case that raises a novel or unsettled question may . . . be a candidate for interlocutory review." *Id.* Fourth, "the posture of the case as it is pending before the district court is of relevance." *Id.*

Humana frames its appeal as two questions: "Can a district court certify a class under 47 U.S.C. § 227(b) where the evidence shows that 'consent' cannot be proved on a class-wide basis?"; and "Did the district court create an impermissible fail-safe class when it defined the class to include only those who did not 'consent' to receive prerecorded calls under 47 U.S.C. § 227(b)?"

Although the issue of class-wide consent can go to several of the Rule 23 factors, Humana appears to raise arguments only as to predominance. This factor "requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455,

459 (2013) (emphasis omitted). While common questions must be proved through evidence common to the class, "plaintiffs seeking class certification need not prove that each element of a claim can be established by classwide proof: What the rule does require is that common questions predominate over any questions affecting only individual [class] members." *Bridging Comtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2016) (citation modified) (emphasis omitted).

Humana has not shown that the district court abused its discretion in finding that predominance is satisfied even if the issue of consent cannot be determined on a class-wide basis. First, Plaintiffs argue that a lack of consent can be easily ascertained from Humana's records indicating that the potential class member told Humana it had reached the wrong number. Humana argues that a "wrong number" call note does not indicate a lack of consent because the note can mean numerous things, and it adds that thirteen people with "wrong number" notes provided declarations stating that they had actually consented to the calls. But Humana's argument that its own record-keeping is deficient or misleading is unavailing. *See, e.g.*, *Krakauer v. Dish Network, L.L.C.*, 311 F.R.D. 384, 393 (M.D.N.C. 2015) ("If the Court were to deny certification because Dish does not keep an accurate list . . . and Dish itself cannot identify which individuals on the list actually requested not to be called, it would create the perverse incentive for entities to keep poor records."), *aff'd*, 925 F.3d 643 (4th Cir. 2019); *Gibbs v. Stinson*, No. 3-CV-676, 2021 WL 4812451, at *12 (E.D. Va. Oct. 14, 2021) ("Courts do not look favorably upon the argument that records a defendant treats as accurate for business purposes are not accurate enough to define a class." (citation modified)). Further, Humana offers only thirteen declarations as evidence that individual questions of consent will predominate, but without knowing how many declarations it sought, that number alone—representing 0.05% of the potential class members—does not raise predominance concerns.

Two of our cases support the district court's conclusion. In *Sandusky Wellness Center, LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460 (6th Cir. 2017), an action alleging that unsolicited fax advertisements violated the TCPA, we held that the district court did not abuse its discretion in concluding that individual issues of consent predominated, precluding the certification of a Rule 23(b)(3) class. *Id.* at 467–70. There was evidence in the record that

several thousand putative class members had been prior customers of the sender of the faxes and had provided written consent to receive the fax advertisements. We distinguished the facts of the case from others where there was no evidence of consent, but merely the possibility that individual class members might have consented. *Id.* at 469.

In *Bridging Communities*, we recognized that affirmative consent is a defense in TCPA cases that can be raised after certification, and reiterated "that a possible defense, standing alone, does not automatically defeat predominance." 843 F.3d at 1125. And "[e]ven where defendants point to some evidence that a defense will indeed apply to some class members, . . . courts routinely grant certification because 'Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class.'" *Id.* at 1126 (quoting *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003)). Moreover, "if evidence later shows that a 'defense is likely to bar claims against at least some class members, then a court has available adequate procedural mechanisms. For example, it can place class members with potentially barred claims in a separate subclass, or exclude them from the class altogether.'" *Id.* at 1126 (quoting *Smilow*, 323 F.3d at 39–40).

Humana's reliance on our recent decision in *Speerly v. General Motors, LLC*, 143 F.4th 306 (6th Cir. 2025) (en banc), is likewise misplaced. Specifically, Humana argues that *Speerly* announced a categorical prohibition on conditional certification—and that the district court, here, violated that prohibition by certifying a class "based on preliminary data showing its potential membership, with plans to later 'cull the class members' who, based on individualized evidence, turn out not to have been harmed." Humana's First Rule 28(j) Letter, ECF 11, at 1 (quoting *Speerly*, 143 F.4th at 329). Humana's characterization of *Speerly* is correct, insofar as we explained that a district court "must not defer merits questions bearing on commonality and predominance until summary judgment" because, under Rule 23, a court must "refuse certification until it is assured that certification is proper." *Speerly*, 143 F.4th at 317. However, Humana's attempted application of *Speerly* to this case is unpersuasive—as the facts (and reasoning) on which our holding in *Speerly* relied render that case inapposite. In *Speerly*, we vacated and remanded after the district court certified 26 state-wide subclasses that were bringing a total of 59 state law claims under various consumer protection statutes, on behalf of

roughly 800,000 buyers of cars with defective transmissions. There, we found that the district court had erred in certifying the class because differences across the various state laws meant that individualized issues predominated over common ones as they related to proving elements of the various claims. *Id.* at 333 (finding "common questions do not predominate in the state consumer protection statutes that require reliance or defect-manifestation"). The district court did not similarly abuse its discretion here in certifying a single class under the TCPA, where no intra-class variations exist.

Finally, Humana argues that the district court abused its discretion by concluding that lack of consent could be established by asking potential class members to submit affidavits as to whether they consented to receive calls from Humana. Humana argues that the district court intends to improperly use affidavits to establish its liability and to improperly do so at the notification stage. Not so. The district court indicated multiple times that affidavits would be used to determine class membership. Humana also argues that we have rejected the use of affidavits to determine class membership, citing *Sandusky.* But in that case, there were no objective records to determine whether potential class members had received a fax from the defendant. 863 F.3d at 471–72. Humana argues that Elliot has not provided such an objective list, and that its call records are inadmissible hearsay. But evidence at the class certification stage need not be admissible at trial, and Humana does not argue that there is no way to extract objective data from its records. *Lyngaas v. Curaden Ag*, 992 F.3d 412, 428–29 (6th Cir. 2021). And to the extent Humana argues that affidavits are unreliable or too burdensome to establish consent, its argument is undercut by its own use of declarations to show that thirteen class members did consent, implying that the question can be answered through a simple affidavit or declaration. Humana does raise valid concerns that individual issues regarding consent may ultimately overwhelm the common issues. But the district court acknowledged those issues and, as discussed below, indicated that it would reconsider certification if Humana's concerns manifest.

Humana next attacks the underlying method that Elliot's expert, Anya Verkhovskaya, submitted for ascertaining and notifying potential class members.  Ascertainability requires an "administratively feasible [method] for the court to determine whether a particular individual is a member."  *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016) (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012)).  Courts have disagreed on whether Verkhovskaya's "reverse-append" methodology—which cross-references Humana's records with telephone carrier data and third-party data processors—is reliable for notification purposes, including where, as here, her methodology failed to identify the named plaintiff.  *See, e.g.*, *Carroll v. SGS Auto. Servs., Inc.*, No. 16-CV-537, 2020 WL 7024477, at *5 (M.D. La. Nov. 30, 2020) (excluding Verkhovskaya's testimony because the reverse-append methodology was unreliable); *Hunter v. Time Warner Cable, Inc.*, 15-CV-6445, 2019 WL 3812063, at *11 (S.D.N.Y. Aug. 14, 2019) (collecting cases where the methodology was rejected); *but see* *Samson v. United Healthcare Servs. Inc.*, No. 19-CV-00175, 2023 WL 6793973, at *9–10 (W.D. Wash. Oct. 13, 2023) (finding Verkhovskaya's methodology sufficient at the class certification stage); *Johnson v. Comodo Grp., Inc.*, No. 16-CV-4469, 2020 WL 525898, at *7, 9 (D.N.J. Jan 31, 2020) (collecting cases where the reverse-append proceed was successfully used in TCPA cases); *Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376, 386–87 (D. Mass. 2024) (finding that failure to identify the named plaintiff was "irrelevant" based on the facts of that case).  The district court addressed all of Humana's arguments in its order denying its motion to exclude Verkhovskaya's expert testimony.  And, as the district court acknowledged, the conflicting treatment of Verkhovskaya's methodology appears to depend on the facts and records available in each case.

Humana argues that if we do not grant review, there may be a circuit split over the application of Verkhovskaya's methodology, citing the Fourth Circuit's recent decision in *Davis v. Capital One N.A.*, No. 24-1507, 2025 WL 2445880 (4th Cir. Aug. 26, 2025).  But key differences render *Davis* inapposite.  First, the district court in *Davis* granted the defendant's motion to exclude Verkhovskaya's testimony because it was unreliable and it denied class certification, so the Fourth Circuit reviewed those decisions for an abuse of discretion.  *Id.* at *1.  The opposite is true here, and Humana does not address the effect of the posture of this case on our deference to the district court's decisions here.  Further, in *Davis*, Verkhovskaya conceded

that the proposed methodology was "never fully implemented," including, for example, that the reverse history append "step" was "forwent entirely." *Id.* at \*4. There, the defendant's competing expert had also shown that Verkhovskaya's methodology was only twenty-five percent accurate in identifying non-customers from a list of phone numbers. *See id.* at \*2. The same cannot be said here. Humana offers only thirteen instances of potential class members who would be excluded. Thus, *Davis*, which is not binding on this court, also does not control the outcome here.

Humana incorrectly states that the district court created a fail-safe class when it modified the class definition to exclude those who consented to receive calls on behalf of a Humana account holder. "[A] class definition is impermissible where it is a 'fail-safe' class, that is, a class that cannot be defined until the case is resolved on its merits." *Young*, 693 F.3d at 538 (citing *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir.2011)). A "fail-safe" class "includes *only* those who are *entitled* to relief." *Id.* "Such a class is prohibited because it would allow putative class members to seek a remedy but not be bound by an adverse judgment—either those 'class members win or, by virtue of losing, they are not in the class' and are not bound." *Id.* (quoting *Randleman,* 646 F.3d at 352).

Humana has the standard backwards. A fail-safe class would include only recipients who did not consent to receive calls—because consent is an element of the TCPA claim, membership depends on proving liability. Here, the class definition excludes individuals who are current account holders of Humana, or persons who consented to receiving calls on the account holder's behalf, meaning that the definition is not defined entirely in terms of consent or lack thereof. For example, courts within this circuit have rejected classes as fail-safe under the TCPA, but generally where the class was defined only to include those who did not give prior express consent. *See Sauter v. CVS Pharmacy, Inc.*, No. 13-CV-846, 2014 WL 1814076, at \*8 (S.D. Ohio May 7, 2014) (striking class allegations of a TCPA class consisting of those "*who did not provide prior express consent for*" prerecorded calls); *cf. Carmouche v. A1 Diabetes & Med. Supply, Inc.*, 586 F. Supp. 3d 795, 806 (W.D. Tenn. 2022) (denying a motion to strike a class consisting of those who received prerecorded calls but were not customers of the caller); *but see Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536, 539 (E.D. Mich. Apr. 20, 2015) (striking

class allegations for a class consisting of those "who did not provide [their] phone number[s]" but nevertheless received prerecorded calls). Because the district court did not create a fail-safe class, Humana is not likely to succeed on this argument. The remaining factors likewise do not support review.

The "death-knell" factor requires consideration of whether "the costs of continuing litigation for either a plaintiff or defendant may present such a barrier that later review is hampered." *Delta Air Lines*, 310 F.3d at 960. The "undue pressure" to settle should be more than "the impact of the class certification alone." *Id.* at 961. In support, "a defendant . . . should provide the court insight into potential expenses and liabilities." *Id.* at 960.

Humana does not submit any financial data to support its claim of potential financial harm. It states that Plaintiffs seek "hundreds of millions of dollars in damages," but provides no indication of its own net worth or assets. Instead, it cites other TCPA class action suits where the parties settled as evidence that it faces undue pressure to settle. Humana has not argued that it cannot or will not continue to defend this action if its petition to appeal is not granted. And it still may evade liability entirely if its motion for summary judgment is granted. Thus, the death-knell factor does not support an immediate appeal.

Humana's only unsettled question does not merit review at this stage of the litigation. Courts have disagreed on whether consent can be established on a class-wide basis in a TCPA case. It does not appear, however, that there is a one-size-fits-all approach to that determination because it is so fact-specific. Thus, although this question is unsettled, any ruling from this court would not necessarily provide applicable guidance for other TCPA cases where consent is an issue.

The posture of the case also weighs against granting the petition. The district court stated multiple times that it might reconsider class certification. For example, in certifying the class, it acknowledged that if individualized inquiries into consent later "threaten[ed] to swamp common questions," or other grounds for decertification arose, it would address those issues at that time. *Bridge v. Credit One Fin.*, 294 F. Supp. 3d 1019, 1038 (D. Nev. 2018). Additionally, once the

proceedings below are no longer stayed, the district court can adjudicate Humana's motion for summary judgment, which may end the case.

Accordingly, the petition for permission to appeal is **DENIED**.

ENTERED BY ORDER OF THE COURT

Kelly L. Stephens, Clerk