RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0126p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

No. 09-4533

JERRY RANDLEMAN; DIANNE M.
RANDLEMAN,

> *Plaintiffs-Appellants,*

*v.*

FIDELITY NATIONAL TITLE INSURANCE CO.,
> *Defendant-Appellee.*

Nos. 09-4533; 10-4242

No. 10-4242

DEAN HICKMAN; AIMEE HICKMAN,
> *Plaintiffs-Appellants,*

*v.*

FIRST AMERICAN TITLE INSURANCE CO.,
> *Defendant-Appellee.*

Appeal from the United States District Courts
for the Northern District of Ohio at Toledo and Cleveland.
Nos. 06-07049; 07-01543—James G. Carr, District Judge;
Solomon Oliver, Jr., Chief, District Judge.

Argued: April 20, 2011

Decided and Filed: May 16, 2011

Before: MARTIN, SILER, and ROGERS, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Marvin L. Karp, ULMER & BERNE LLP, Cleveland, Ohio, for Appellants. Thomas D. Warren, BAKER & HOSTETLER LLP, Cleveland, Ohio, Elizabeth T. Ferrick, SNR DENTON US LLP, St. Louis, Missouri, for Appellees. **ON BRIEF:** Marvin L. Karp, David D. Yeagley, Shannan L. Katz, ULMER & BERNE LLP, Cleveland, Ohio, Mark R. Koberna, SONKIN & KOBERNA CO., LPA, Cleveland, Ohio, for Appellants. Thomas D. Warren, Ernest E. Vargo, Michael E. Mumford, BAKER & HOSTETLER LLP, Cleveland, Ohio, Elizabeth T. Ferrick, Charles A. Newman, SNR DENTON US LLP, St. Louis, Missouri, Michael C. Cohan, Alexander

E. Goetsch, CAVITCH, FAMILO, DURKIN & FRUTKIN, Cleveland, Ohio, for Appellees.

———————————

**OPINION**

———————————

        BOYCE F. MARTIN, JR., Circuit Judge.  Jerry and Dianne Randleman appeal the district court's decision to decertify the class in an action that they brought against Fidelity National Title Insurance Company.  The Randlemans allege that Fidelity failed to provide a discount, as required by its filed rates, when issuing title insurance to homeowners who had purchased a title insurance policy for the same property from any other insurer within the previous ten years.  Dean and Aimee Hickman brought an action alleging the same claims against First American Title Insurance Company, but the district court denied their motion to certify a class.  Neither district court abused its discretion in concluding that, as the classes are presently defined, common issues do not predominate.  We therefore **AFFIRM** both orders.

**I.**

**A.    The Randlemans.**

        When Jerry and Dianne Randleman purchased a home in New London, Ohio in 2001, they also purchased both a lender's title insurance policy and an owner's policy.  In 2004 the Randlemans refinanced their home and their new mortgagee required that they purchase a new title insurance policy for its benefit.  Fidelity issued the new policy but failed to give the Randlemans the discounted "refinance" rate applicable when another insurer has issued a title insurance policy on the property within the previous ten years.  The Randlemans assert that Fidelity overcharged them $213.57 by failing to provide the discount.

        Ohio law requires that Fidelity file its rates with the state, which it does through the Ohio Title Insurance Rating Bureau.  The Bureau filed a "Rate Manual" with Ohio,

which is binding on Fidelity, and requires that Fidelity charge a discounted premium rate for policies issued in connection with refinancing transactions. This discount appears to be based on there being less risk to the current underwriter, and less investigation required, because some other entity has recently investigated and insured the title to the property. Provision PR-10 of the Rate Manual states:

> When a refinance loan is made to the same borrower on the same land, the following rate will be charged . . . provided the Insurer is given a copy of the prior policy, or other information sufficient to enable the Insurer to identify such prior policy upon which reissue is requested, and the amount of the unpaid principal balance secured by the original loan:

| Age of Original Loan | Policy Rates |
|---|---|
| 10 years or under | 70% of original rate |
| Over 10 years | 100% of original rate |

Provision PR-9 of the Rate Manual is similarly worded and offers the same thirty percent discount to homeowners who purchased an owner's title insurance policy for the property within the previous ten years.

Although the Randlemans' prior title insurance purchase made them eligible for this discount, they were unaware it existed. Consequently, the Randlemans never requested the discount or submitted the necessary documentation to establish that they had recently purchased title insurance. After considering all of the requirements for class certification in Federal Rule of Civil Procedure 23, the district court, pursuant to Rule 23(b)(3), initially certified a class consisting of:

> All persons who (i) paid for title insurance issued by defendant Fidelity National Title Insurance Company in connection with the refinancing of a residential mortgage loan on property located in Ohio that was completed on or after February 15, 2000, (ii) were entitled to receive the "reissue" or "refinance" rate for title insurance pursuant to Section 8 or Section 9 of the Filed Rates (for transactions prior to February 1, 2002) or PR-9 or PR-10 of the Filed Rates (for transactions February 1, 2002 to the present), and (iii) paid more than the "reissue" or "refinance" rate for such title insurance.

Because Fidelity must have received a copy of the prior policy or the file must have contained "other information sufficient to enable [Fidelity] to identify such prior policy upon which reissue is requested" in order for the individual to be eligible to receive the discount, the key question as this litigation is currently framed and the class is defined is what each application for title insurance contained. The district court's initial conclusion that this question is common to all class members and predominates over all other issues was based largely on its view that "a prior mortgage invariably, or nearly so invariably as to make any variation meaningless, meant that a prior policy had issued." *Randleman v. Fidelity Nat'l Title Ins. Co.*, 264 F.R.D. 298, 303 (N.D. Ohio 2009). However, after the district court certified the class, the parties engaged in rather extensive discovery and deposed representatives from various Ohio lenders about their practices and use of title insurance. Fidelity established that mortgagees can, and apparently often do, rely on opinion letters from attorneys or title guarantees in lieu of purchasing title insurance. This evidence established that the district court's earlier presumption about the ubiquity of title insurance in mortgage transactions was incorrect: a prior mortgage in the chain of title would not have given Fidelity notice that the homeowner had previously purchased title insurance. The district court accordingly reasoned that liability could only be determined on an individual basis by examining each individual homeowner's file. Therefore, the district court concluded that the putative class failed to meet the commonality or typicality requirements necessary to sustain a class action. Additionally, in light of the individual analysis necessary to determine liability, the district court concluded that common issues did not predominate.

**B.    The Hickmans.**

When Dean and Aimee Hickman purchased a home in Elyria, Ohio in 1999 they also purchased both a lender's title insurance policy and an owner's policy. The Hickmans then refinanced their home in 2001 and again in 2004. The Hickmans purchased a new title insurance policy for each transaction, with First American issuing the 2004 policy. The Hickmans were apparently unaware that they were eligible to receive the refinance discount, and there is no evidence that they requested the discount

or submitted documentation to First American establishing that they had previously purchased title insurance. The Hickmans claim that by not providing the discount First American overcharged them $134.40.

First American, like Fidelity, files its rates through the Ohio Title Insurance Rating Bureau and is subject to provisions PR-9 and PR-10, which provide the "refinance discount" of thirty percent when issuing a title insurance policy if some other title insurer has issued a policy for the property in the previous ten years.

The Hickmans proposed that the district court certify a class of:

> All persons who (i) paid for a lender's policy of title insurance issued by defendant First American Title Insurance Company in connection with the refinancing of a residential mortgage loan on property located in Ohio that was completed on or after February 2, 2000; (ii) where the subject property previously had been mortgaged within the applicable look-back period; and (iii) paid more than the discounted "reissue" or "refinance" rate for such title insurance.

Unlike the Randlemans' proposed class, membership in the Hickmans' class does not turn on an individual's "entitlement" to receive the discount, but includes all individuals who refinanced a mortgage within the ten-year look-back period.

The district court considered the requirements in Rule 23 for certifying a class action and concluded that the Hickmans' proposed class failed to meet the commonality or typicality requirements. Additionally, the district court held that even if the commonality requirement of Rule 23(a) were met, common questions did not predominate as required to maintain a class action under Rule 23(b)(3). Thus, the district court denied the motion for class certification.

**II.**

**A.    Standard of Review.**

This Court reviews a district court's decision to deny class certification for abuse of discretion.  *Ball v. Union Carbide Corp.*, 385 F.3d 713, 727 (6th Cir. 2004).  "The district court maintains substantial discretion in determining whether to certify a class, as it possesses the inherent power to manage and control its own pending litigation." *Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639, 643 (6th Cir. 2006).  "The district court's decision certifying the class is subject to a very limited review and will be reversed only upon a strong showing that the district court's decision was a clear abuse of discretion."  *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 559-60 (6th Cir. 2007) (internal quotation marks and citation omitted).  "A district court abuses its discretion when [it] relies on erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment."  *Id.* at 560 (alteration in original) (internal quotation marks and citation omitted).

Although this Court has not previously addressed the standard of review applicable to orders decertifying classes, other circuits use the same, highly deferential, abuse-of-discretion review applied to certification orders.  *See, e.g.*, *Voss v. Rolland*, 592 F.3d 242, 245-46 (1st Cir. 2010); *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1200 (9th Cir. 2008); *Birmingham Steel Corp. v. Tenn. Valley Auth.*, 353 F.3d 1331, 1335 (11th Cir. 2003).  Applying this same standard of review is also consistent with the district court's continuing obligation to ensure that the class certification requirements are met, and with the district court's ability to alter or amend the certification order as circumstances change and the parties' litigation strategies evolve.  *See Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1214 (6th Cir. 1997); *see also* Fed. R. Civ. P. 23(c)(1)(C). Therefore, we will also review the order decertifying the class action in *Randleman* for abuse of discretion.

**B.    Whether the District Courts Abused Their Discretion by Concluding that Common Issues Do Not Predominate.**

In light of the relatively small sums of money involved in each individual transaction, a class action appears to be the only way in which homeowners who were improperly denied the discount on title insurance may be able to recover. However, under the plaintiffs' theory of liability and proposed class definitions, neither district court abused its discretion by concluding that common issues do not predominate and refusing to allow class-wide litigation to proceed.[1]

**1.    The Randlemans.**

The class the district court initially certified was flawed in that it only included those who are "entitled to relief." This is an improper fail-safe class that shields the putative class members from receiving an adverse judgment. Either the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment.[2] *See Genenbacher v. Centurytel Fiber Co. II, LLC*, 244 F.R.D. 485, 488 (C.D. Ill. 2007); *see also Campbell v. First Am. Title Ins. Co.*, 269 F.R.D. 68, 73-74 (D. Me. 2010) (revising the class definition to avoid "the 'fail safe' issue"); *Slapikas v. First Am. Title Ins. Co.*, 250 F.R.D. 232, 25-51 (W.D. Pa. 2008) (same). Although this is an independent ground for denying class certification, the district court also did not abuse its discretion in decertifying the Randlemans' class based on its conclusion that common issues do not predominate.

In addition to the numerosity, commonality, typicality and adequacy prerequisites necessary for all class actions, Fed. R. Civ. P. 23(a), in order to bring a damages class action under Rule 23(b)(3) the court must find that common questions predominate and

---

[1] Both district courts also held that the putative classes did not meet the commonality or typicality requirements. However, because we hold that the district courts did not abuse their discretion in concluding that the predominance requirement is unsatisfied, we do not address whether the district courts abused their discretion in finding these other requirements unsatisfied.

[2] While we cannot redefine the class on appeal, at oral argument, counsel argued for a class like that proposed in the *Hickman* case, where membership included all those who purchased title insurance for a property that had a prior mortgage within the look-back period.

that a class action is a superior way to resolve the controversy, Fed. R. Civ. P. 23(b)(3). To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof. *Beattie*, 511 F.3d at 564.

The district court initially certified the class assuming that Fidelity would have discovered a prior mortgage in the process of issuing title insurance, and a prior mortgage necessarily means that the applicant purchased title insurance in connection with that prior mortgage. *Randleman*, 264 F.R.D. at 304. If this presumption held up, it may have been possible to maintain a class action with the common issue being whether a prior mortgage is sufficient "other information" to qualify for the discount. However, after Fidelity established through discovery that title insurance is not necessarily—or even usually—purchased in connection with mortgages in Ohio, the district court concluded that common issues do not predominate. *Id.* Consistent with this revelation, district courts in Ohio considering similar class actions brought against other title insurers have all concluded that common issues do not predominate and have either denied class certification or decertified classes. *See Hickman v. First Am. Title Ins. Co.*, No. 07-cv-1543, 2010 WL 3075157, at \*5 (N.D. Ohio Aug. 5, 2010); *Chesner v. Stewart Title Guar. Co.*, No. 06-cv-476, 2009 WL 585823, at \*8 (N.D. Ohio Jan. 9, 2009); *Macula v. Lawyers Title Ins. Corp.*, 264 F.R.D. 307, 311 (N.D. Ohio 2009).

In light of how the Randlemans have framed the issues and defined the class, without the initial presumption, determining liability would require an examination of each individual policy Fidelity issued to determine if Fidelity had received a copy of the prior policy or "other information" suggesting that a policy had previously been issued. Under this framework, establishing that Fidelity received this information is essential to proving liability and, as the district court found, a highly individual inquiry. Similarly, in a lawsuit alleging nearly identical claims against a title insurer in Texas, the Fifth Circuit recently recognized that determining an individual's eligibility to receive the refinance discount is highly individual and affirmed a district court's decision denying class certification based on a failure to meet the predominance requirement. *See*

*Benavides v. Chicago Title Ins. Co.*, – F.3d —, 2011 WL 1107009, at \*3-4 (5th Cir. March 23, 2011). Therefore, because the Randlemans have defined the class and presented their claim in a manner that requires substantial, individual inquiries, the district court's decision decertifying the class was not an abuse of discretion.

While the need to prove damages or establish class membership on an individual basis is not fatal to class certification, liability is a central issue in this matter and the Randlemans' claims can only be determined on an individual basis. In *Beattie*, for example, this Court affirmed a district court's order certifying a class under Rule 23(b)(3) alleging that the defendant violated federal and state law by engaging in deceptive billing practices. 511 F.3d at 559, 568. The central issue in *Beattie* was whether the defendant's billing practices were deceptive, which was common to all subscribers. *Id.* at 565-66. Although each plaintiff would need to show damages individually, we held that the district court did not abuse its discretion in concluding that the class-wide issue of whether the defendant's billing was deceptive predominated over individual issues. *Id.* at 566.

Similarly, the need to prove entitlement to participate in the class on an individual basis will also not necessarily mean that common issues do not predominate. In *Daffin v. Ford Motor Co.*, 458 F.3d 549, 550-51 (6th Cir. 2006), this Court affirmed a district court's order certifying a class alleging breach of an express warranty based on allegedly defective throttle body assemblies in certain Mercury Villager minivans. The district court concluded that the common questions of whether the throttle body was defective, whether the defect reduces the value of the car, and whether the defect is covered by the express warranty predominated over any individual issues. *Id.* at 554. Although each individual would, after the common issues were litigated, need to establish that he or she owned the relevant vehicle during the relevant time period, we affirmed the district court's conclusion that common issues predominated. *Id.* Importantly, both the district court's opinion and our holding were premised on a notion that individuals who owned the car were injured even if they had not personally experienced a stuck throttle body. *Id.* at 552-54. And, we noted that the district court

may need to reconsider whether a class can be maintained if it turned out that only individuals who actually had a stuck throttle body during the warranty period were entitled to recover. *Id.* at 554.

The Randlemans attempt to fit their claim within *Beattie* and *Daffin*, but the requirements in the Ohio rate rules necessitate substantial, individual inquiries to determine liability under their theory of the case and class definition that are incompatible with the predominance requirement of Rule 23(b)(3). Unlike these claims, liability in *Beattie* could be determined on a class-wide basis: if the billing practices were deceptive, they would be deceptive for all class members. *Id.* at 564; *accord Hohinder v. United Parcel Serv., Inc.*, 574 F.3d 169, 184-85 (3d Cir. 2009) (recognizing that the existence of discriminatory policies could be proven on a class-wide basis, but reversing order certifying a class action because class-wide liability required individual inquiries incompatible with the requirements in Rule 23). Unlike these claims, in *Daffin* liability could be determined on a class-wide basis and a class member could establish his or her entitlement to participate in the litigation merely by submitting proof that he or she owned the car during the time period. If the rate rules provided the discount to anyone who previously purchased title insurance, and did not contain a notice requirement, such that a homeowner could recover merely by presenting evidence that he or she had previously purchased a title insurance policy for the property in question within the preceding ten years then, under the Randlemans' theory of the case, a district court might be within its discretion to certify a class. In that situation, the homeowners could establish their eligibility to participate in the class in a manner similar to the class members in *Beattie* and *Daffin*. However, the rate rules require that Fidelity had notice of the prior policy in order to receive the discount. Therefore, under the Randlemans' current theory of the case, presenting a prior policy at this time is not enough to establish that Fidelity wrongfully denied the discount. The only way to resolve these particular claims and establish whether Fidelity improperly refused to give the refinance discount is to consider what Fidelity knew about each individual transaction at the time it issued a policy by examining each individual transaction. Accordingly, we cannot conclude

that the district court abused its discretion by concluding that common issues do not predominate and decertifying the class.

Some district courts in other jurisdictions have certified similar class actions but, in those states, mortgagees appear to regularly require title insurance and it may be reasonable to presume that a prior recorded mortgage constitutes sufficient "other information" to warrant giving the reissue discount. For example, recent revisions to the rate manual in Pennsylvania provide that the refinance rate applies if the title search reveals a prior mortgage from an institutional lender or even just a prior deed to a bona fide purchaser for value. *Slapikas*, 250 F.R.D. at 235-36. Similarly, in Maine, there is some evidence to suggest that most institutional lenders require title insurance. *Campbell*, 269 F.R.D. at 72-73. In both of those states, because of how mortgages are handled, district courts found that classes could be certified. *See generally id.* at 80; *Slapikas*, 250 F.R.D. at 251. However, Fidelity established, and the district courts agreed, that lenders in Ohio do not regularly require title insurance. Therefore, these other district court opinions are not persuasive because they deal with very different factual circumstances. In Ohio, under the Randlemans' theory of the case, each homeowner's entitlement to the discount rate turns on an individual case-by-case analysis, and the district court did not abuse its discretion in concluding that common issues do not predominate and decertifying the class.

## 2.     The Hickmans.

Similarly, the district court did not abuse its discretion in denying the Hickmans' motion for class certification. For the same reasons that the Randlemans failed to establish that common issues predominate, the Hickmans also did not establish that common issues predominate with respect to the class they proposed, and the district court's decision to deny class certification was not an abuse of discretion.

**C.      Whether the District Court Abused Its Discretion by Not Adopting the Randlemans' Proposed Case Management Plan.**

The Randlemans argue that any individual issues could be resolved easily through creative case management procedures. They outline a multistep process that, in their view, would have enabled the district court to resolve these claims on a class-wide basis.[3] District courts have broad discretion in determining whether to bifurcate proceedings or divide a class action into subclasses. *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 271 (3d Cir. 2009); *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009); *see also Beattie*, 511 F.3d at 559 (noting the district court's discretion to certify a class in light of its inherent power to manage and control litigation). The district court did not abuse its discretion by refusing to adopt the Randlemans' plan because it would not have more easily permitted class-wide resolution of these issues. Essentially, the proposed procedure would have been more discovery to determine which lending institutions require that mortgagors purchase title insurance, followed by a trial on the class-wide issues of liability. However, even this formulation—which the Randlemans presumably framed in a manner to minimize individual issues and to emphasize those susceptible to class-wide resolution—would still require substantial, individual inquiries.

For example, the Randlemans assert that one of the purportedly class-wide issues to resolve at trial under their plan is whether "information in a particular property's chain of title" is sufficient "other information" to qualify the homeowner for the discount. This is a highly individualized inquiry into each particular property. Because the Randlemans' case management plan still requires resolving numerous individual issues, we find no abuse of discretion in the district court's decision not to adopt it.

Additionally, Fidelity argues that subclassing and bifurcation cannot be used to overcome a lack of predominance. Some other circuits have adopted this view and held that creative subclassing and bifurcation procedures cannot be used to remedy a lack of

---

[3]The Hickmans did not propose a case management plan to the district court and, therefore, do not argue that the district court abused its discretion in refusing to adopt one.

predominance. *See, e.g.*, *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1176 (11th Cir. 2010); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 & n.20 (5th Cir. 1996); *see also Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 446-47 (4th Cir. 2003) (Niemeyer, J., concurring in part and dissenting in part). However, other circuits see no such barrier and allow subclassing as long as common issues predominate over the subclasses. *See, e.g.*, *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 226 (2d Cir. 2006); *Gunnells*, 348 F.3d at 439*; Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). The Sixth Circuit has not yet weighed in on this issue and we do not at this time because even under the Randlemans' proposed subclassing plan, common issues still do not predominate.

## III.

The relatively small amount of money that each individual plaintiff could possibly recover suggests that a class action is the only real meaningful way to afford relief in this case. While our holding does not extend to a class that might be differently defined to satisfy the requirements in Rule 23, as these claims are presented and classes are defined, resolving each individual homeowner's entitlement to the refinance rate requires a highly individual inquiry. Therefore, the district courts did not abuse their discretion in concluding that the claims presented in these two putative classes are not amenable to class-wide resolution. Accordingly, we **AFFIRM** the district courts' decisions.