RENDERED: MAY 23, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0812-ME

KENTUCKY STATE LODGE
FRATERNAL ORDER OF POLICE;
CARL "CORKY" PARKER;
DARRELL S. AMMON; DAVE
HERRMAN; GEORGE RUSSELL;
MICHAEL J. LORAN; PAUL
EUGENE WEAVER; RAYMOND
SPANN; AND RIVER CITY
FRATERNAL ORDER OF POLICE
LODGE 614, INC.                                                            APPELLANTS


|  | APPEAL FROM FRANKLIN CIRCUIT COURT |
|---|---|
| v. | HONORABLE PHILLIP J. SHEPHERD, JUDGE |
|  | ACTION NOS. 19-CI-00880, 22-CI-00045, & 22-CI-00082 |


COUNTY EMPLOYEES
RETIREMENT SYSTEM AND
KENTUCKY PUBLIC PENSION
AUTHORITY                                                                    APPELLEES

AND

NO. 2024-CA-0813-ME

LINDA COOK                                                                  APPELLANT

APPEAL FROM FRANKLIN CIRCUIT COURT
v.      HONORABLE PHILLIP J. SHEPHERD, JUDGE
ACTION NOS. 19-CI-00880, 22-CI-00045, & 22-CI-00082


COUNTY EMPLOYEES
RETIREMENT SYSTEM AND
KENTUCKY PUBLIC PENSION
AUTHORITY                                            APPELLEES

AND


NO. 2024-CA-0853-ME


KENTUCKY PUBLIC PENSIONS
AUTHORITY AND COUNTY
EMPLOYEES RETIREMENT
SYSTEM                                        CROSS-APPELLANTS


CROSS-APPEAL FROM FRANKLIN CIRCUIT COURT
v.      HONORABLE PHILLIP J. SHEPHERD, JUDGE
ACTION NOS. 19-CI-00880, 22-CI-00045, & 22-CI-00082


KENTUCKY STATE LODGE
FRATERNAL ORDER OF POLICE;
CARL "CORKY" PARKER;
DARRELL S. AMMON; DAVE
HERMAN; GEORGE RUSSELL;
MICHAEL J. LORAN; PAUL
EUGENE WEAVER; RAYMOND
SPANN; AND RIVER CITY
FRATERNAL ORDER OF POLICE
LODGE 614, INC.                            CROSS-APPELLEES

AND

KENTUCKY PUBLIC PENSIONS
AUTHORITY AND COUNTY
EMPLOYEES RETIREMENT
SYSTEM                                                    CROSS-APPELLANTS


                    CROSS-APPEAL FROM FRANKLIN CIRCUIT COURT
v.                  HONORABLE PHILLIP J. SHEPHERD, JUDGE
                    ACTION NOS. 19-CI-00880, 22-CI-00045, & 22-CI-00082


LINDA COOK                                                 CROSS-APPELLEE


                                    OPINION
                                   AFFIRMING

                              ** ** ** ** **

BEFORE:  EASTON, ECKERLE, AND KAREM, JUDGES.

ECKERLE, JUDGE:  The Appellants/Cross-Appellees consist of eight named

individual retirees and two organizational parties that represent retirees

(collectively, "the Retirees").  The Retirees brought the underlying actions in the

Franklin Circuit Court alleging that the Appellees/Cross-Appellants, the County

Employees' Retirement System ("the CERS") and the Kentucky Public Pensions

Authority (collectively, "the Pensions Authority"), have impaired their vested

rights to health-insurance coverage during their retirement.  The Retirees sought

certification of class actions for their respective claims for declaratory and injunctive relief and for damages.

The Trial Court granted the Retirees' motion for certification of classes for declaratory and injunctive relief but denied certification of the classes for the damages claims. In their direct appeals, the Retirees argue that the Trial Court improperly analyzed the predominance and superiority factors of Kentucky Rule of Civil Procedure ("CR") 23.02. In the cross-appeal, the Pensions Authority contends that the Trial Court improperly certified the classes for declaratory and injunctive relief. We conclude that the Trial Court properly addressed all of these matters and that its findings are neither clearly erroneous nor an abuse of its discretion. Hence, we affirm.

I.      **Facts and Procedural History**

The underlying claims in this matter involve health-insurance coverage for retirees covered by the CERS, which is one of several systems for retirees of governmental agencies in Kentucky. These systems were previously administered by the Kentucky Retirement Systems ("the Retirement Systems"), now the Pensions Authority. Beginning in 1978, Kentucky guaranteed free health insurance to retirees who meet the age and years-of-service requirements. Non-hazardous-duty retirees were permitted to purchase coverage for spouses or

eligible dependents.  Spouses or dependents of a hazardous-duty retiree were eligible to receive the same coverage and contribution rate as the member.

In Kentucky Revised Statute ("KRS") 78.852(1), the General Assembly specified that, for members who began participating in the CERS prior to January 1, 2014, the provision of these health-insurance benefits was so significant that it rose to the level of a contract between the members and the Commonwealth:

> in consideration of the contributions by the members and in further consideration of benefits received by the county from the member's employment, KRS 78.510 to 78.852 shall, except as provided in KRS 6.696, *constitute an inviolable contract of the Commonwealth*, and the benefits provided therein *shall not be subject to reduction or impairment by alteration, amendment, or repeal*.

(Emphasis added.)[1]  These benefits are now often referred to as "the inviolable contract."  *See* KY CONST. § 19.  The legislature proclaimed that CERS members have a "right" to pension benefits, including health insurance, that the Commonwealth would hold dear because it had promised these benefits at certain levels to these beneficiaries as an integral part of their employment.  *Jones v. Bd. of Trs. of Ky. Ret. Sys.*, 910 S.W.2d 710, 715 (Ky. 1995).  And yet under certain

---

[1] The prior versions of this statute, beginning in 1972 included the same inviolable-contract language.  2024 Ky. Laws Ch. 55, § 27 (eff. 7-15-24); 2020 Ky. Laws Ch. 79, § 39 (eff. 4-1-21); 2018 Ky. Laws Ch. 107, § 34 (eff. 7-14-18); 2013 Ky. Laws Ch. 120, § 80 (eff. 7-1-13); 1996 Ky. Laws Ch. 167, § 27 (eff. 7-15-96); 1993 Ky. Laws 1st extra session, Ch. 4, § 80 (eff. 9-16-93); 1976 Ky. Acts Ch. 321, § 40; and 1972 Ky. Acts Ch. 116, § 75.

circumstances, the Kentucky Supreme Court has found some impairment to be permissible as a legitimate exercise of the state's sovereign powers. *Maze v. Bd. of Directors for Commonwealth Postsecondary Educ. Prepaid Tuition Tr. Fund*, 559 S.W.3d 354, 369 (Ky. 2018).

Starting in 2014, the Retirement Systems took the position that the Federal Medicare Secondary Payer Statute, 42 United States Code ("U.S.C.") § 1395y, prohibited it from offering coverage that was secondary to Medicare. As a result, the Retirement Systems asserted that the inviolable-contract provision of KRS 78.852 and the Contract Clause in Section 19 of the Kentucky Constitution were pre-empted by Federal law. Based on this policy, the Retirement Systems began informing retirees in 2015 that their state-provided health-insurance coverage would terminate upon their reaching age 65. The Retirement Systems further advised retirees that they would be required to obtain coverage under the Federal Medicare health-insurance program. Likewise, the Retirement Systems advised spouses and dependents of retirees that they would be terminated from the state plan and required to obtain Medicare coverage upon reaching age 65. The Retirement Systems agreed to pay the retirees' additional costs for enrolling in a Medicare Advantage or Supplement Plan. However, Retirement Systems did not pay the premiums required for Medicare Part-B coverage.

In response, the River City Fraternal Order of Police Lodge 614, Inc. ("River City FOP") brought an action in Federal Court challenging these actions. Those claims involved hazardous-duty CERS retirees who had subsequently taken employment with employers that offer group health insurance and were eligible for Medicare upon turning 65 years of age. Retired members of the River City FOP challenged the Retirement Systems' interpretation that Federal statute pre-empted the inviolable-contract provision of KRS 78.852. The retired members also challenged the Retirement Systems' position that they were subject to termination of their state-provided health insurance when they: (1) re-entered the workforce with an employer that offered a health plan; and (2) were about to become Medicare-eligible by virtue of turning 65 years of age.

The United States District Court for the Eastern District of Kentucky determined, *inter alia*, that the Medicare Secondary Payer Statute does not apply to group health plans providing coverage to those over age 65 for reasons other than current employment status. *River City Fraternal Ord. of Police Lodge 614, Inc. v. Kentucky Ret. Sys.*, 375 F. Supp. 3d 748, 759-60 (E.D. Ky. 2019). Consequently, the Federal Court held that the Federal Act did not prohibit the Retirement Systems from offering health insurance to retirees who were otherwise eligible for Medicare. *Id.* at 760. As a result, the Federal Court concluded that the retirees' health-insurance benefits remained subject to the inviolable-contract provision of

KRS 78.852(1). *Id.* at 770. The Federal Court also concluded that the Retirement

Systems breached the inviolable contract, holding as follows:

> Pursuant to the inviolable contract, as detailed above,
> Kentucky promised Plaintiffs health insurance coverage
> at no cost. By terminating that health insurance
> coverage, Retirement Systems (an arm of State) breached
> that contract. The inviolable contract between Plaintiffs
> and the Commonwealth of Kentucky is the equivalent of
> any other lawfully authorized written contract under KRS
> § 45A.245 to which the Commonwealth is a party. *See*
> [*Commonwealth v. Kentucky Ret. Sys.*, 396 S.W.3d 833,
> 838 (Ky. 2013)]. It follows then that by virtue of the
> right of action provided by KRS § 45A.245(1), Plaintiffs
> may bring an action to require Retirement Systems to live
> up to its contractual obligations. *Id.*; [*Univ. of Louisville
> v. Rothstein*, 532 S.W.3d 644, 649-50 (Ky. 2017)].
> Plaintiffs have done just that.

*Id.* The Sixth Circuit Court of Appeals affirmed this holding on appeal. *River City*

*Fraternal Ord. of Police Lodge 614, Inc. v. Kentucky Ret. Sys. by & through Bd. of*

*Trustees*, 999 F.3d 1003 (6th Cir. 2021).

The current actions originated with complaints filed in the Franklin

Circuit Court seeking declaratory relief. David Leightty filed the first complaint

(Action No. 19-CI-00880) in August of 2019, while the Federal action was

pending. He asserted some of the same claims as the River City FOP. However,

he did so as a non-hazardous CERS retiree and did not claim that he had re-entered

the workforce with an employer that offered a health plan. On or about May 23,

2022, David Leightty's wife, Sharon Leightty, joined as a party plaintiff and filed

an amended complaint, alleging that David Leightty was no longer eligible to purchase health-insurance coverage for her after she turned 65 (collectively, "Leightty"). The Trial Court held the Leightty case in abeyance until the Federal cases were resolved.

After the Sixth Circuit's ruling in the Federal case, the second complaint (Action No. 22-CI-00045) was filed in January 2022 by the Appellants/Cross-Appellees, the Kentucky State Fraternal Order of Police, the River City FOP (the same party as the Federal case), and seven individual plaintiffs (collectively, "the FOP parties") on behalf of hazardous-duty CERS retirees. And in February 2022, Cross-Appellee, Linda Cook, individually and on behalf of other similarly-situated, non-hazardous-duty CERS retirees ("Cook"), filed the third complaint (Action No. 22-CI-00082). Each of these complaints sought declaratory and injunctive relief, alleging that the modification of the retiree benefit violated the "inviolable-contract" provisions of KRS 78.852. The complaints further alleged, based on the same conduct, that the Retirement Systems' actions constitute impairment of their contractual rights under Section 19 of the Kentucky Constitution; wrongful taking in violation of Section 13 of the Kentucky Constitution; and arbitrary governmental action in violation of Section 2 of the Kentucky Constitution. The complaints further asserted that the Retirement Systems should be equitably estopped from enforcing its post-2014 interpretation

-9-

against members who retired in reliance on the provisions of the former interpretation. Finally, the complaints sought damages, including reinstatement of retiree and spousal health-insurance coverage, and reimbursement of premiums paid for Medicare Part-B coverage.

Shortly after the filing of these actions, the General Assembly amended KRS 61.702(2)(b)3., essentially adopting the Retirement Systems' post-2014 policy of terminating retirees' state-provided health insurance and requiring them to enroll in Medicare. 2022 Ky. Laws Ch. 216 (HB 297) § 16 (eff. 4-14-22). At the same time, the General Assembly restructured the Retirement Systems, established a separate Board of Trustees to manage each System, and changed the name of the administrative agency to the Pensions Authority. *See generally* KRS 61.646. Leightty, the FOP parties, and Cook filed amended complaints to reflect these changes. The Franklin Circuit Court consolidated the Leightty and FOP parties' cases and directed those cases to be heard with the Cook case.

The FOP parties and Cook sought certification of their claims as a class action under CR 23.01 and 23.02. They specifically requested that the Trial Court certify two injunctive and declaratory relief subclasses – one for hazardous-duty retirees and the other for non-hazardous-duty retirees. And they requested certification of four damages subclasses, with the hazardous-duty plaintiffs and non-hazardous-duty plaintiffs each seeking classes for: (a) members whose

-10-

free/no-cost health insurance has already been terminated upon turning age 65 and who have had to pay premiums for alternate coverage ("the alternate premium subclasses"); and (b) members whose free/no-cost health insurance was terminated upon turning age 65 and who avoided termination of that coverage by leaving a full-time employment position ("the re-employment subclass").

In an order entered on June 25, 2024, the Trial Court granted the Retirees' motions for certification of the injunctive and declaratory relief classes. The Trial Court concluded that the proposed classes met the requirements of CR 23.01 requiring a showing that: the classes were so numerous that joinder of all members is impractical (numerosity); there are questions of law or fact common to each class (commonality); the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and that the representative parties will fairly and adequately protect the interests of the class (adequacy of representation).

However, the Trial Court concluded that the Retirees failed to meet all of these requirements with respect to the proposed damages subclasses. In particular, the Trial Court found that the Retirees failed to establish the elements of commonality and adequacy of representation. The Trial Court also determined that the Retirees failed to establish that any common issues predominated or that class-action certification is the superior method of adjudicating the damages claims.

Thus, the Trial Court denied certification of the proposed alternate premium and re-employment subclasses. On August 19, 2024, the Trial Court entered an amended order setting out the class definitions for declaratory and injunctive relief.

The FOP parties and Cook each filed notices of appeal from the Trial Court's order denying certification of the damages subclasses. [2] The Pensions Authority filed cross-appeals, arguing that the Retirees failed to satisfy the requirements of CR 23.01 and 23.02 for certification of the proposed hazardous-duty and non-hazardous-duty subclasses for declaratory and injunctive relief. The

---

[2] As noted above, the Plaintiffs in Action No. 19-CI-0880 were David Leightty and his spouse, Sharon Leightty. That case was consolidated with the FOP parties' cases, Action Nos. 22-CI-00045 and 22-CI-00082. Action No. 19-CI-0880 was one of the cases listed on the Notices of Appeal and Cross-Appeal. However, David and Sharon Leightty were omitted as named parties on the Notice of Appeal. At oral argument, in response to questioning by the Court, counsel for the FOP parties and Cook explained,

> So Mr. Leightty's case . . . is not a class; there's no class action issue involved in that case. It's just a claim on his behalf and his wife's behalf against the Retirement System for something that's similar, but there's no class action status sought. And that's why it wasn't part of the briefing in that case in the circuit court and that's why he's not here right now arguing these issues.

We note that, under Kentucky Rule of Appellate Procedure ("RAP") 2(A)(2), all parties to the underlying proceedings, except those who have been dismissed in an earlier final and appealable order, are automatically before this Court upon the filing of the notice of appeal. By including the No. 19-CI-00880 case in the Notices of Appeal, the FOP parties and Cook would seem to have included the Leighttys as parties to this appeal. But since David and Sharon Leightty never sought class-action certification in their case, they are not aggrieved by the Trial Court's rulings and would not have standing to appeal. *See Commonwealth, Cabinet for Health & Fam. Services, Dept. for Medicaid Servs. v. Sexton ex rel. Appalachian Reg'l Healthcare, Inc.*, 566 S.W.3d 185, 192 (Ky. 2018). Furthermore, they continue to assert their own separate claims. In addition, David Leightty was appointed as one of the counsel for the hazardous-duty subclass. Under these particular, factual circumstances, we conclude that their presence or absence as named parties in these appeals is not relevant to our analysis.

parties filed amended notices of appeal and cross-appeal after entry of the Trial Court's August 19, 2024, order. This Court directed that the appeals and cross-appeals should be heard together pursuant to RAP 2(F). Additional facts will be set forth below as necessary.

## II.     Standard of Review

An order granting or denying class-action certification is subject to immediate, expedited appeal. CR 23.06. We review a circuit court's decision for an abuse of discretion. *Hensley v. Haynes Trucking, LLC*, 549 S.W.3d 430, 444 (Ky. 2018). A court abuses its discretion if its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000). More specifically, a court abuses the discretion afforded it when "(1) its decision rests on an error of law . . . or a clearly erroneous factual finding, or (2) its decision . . . cannot be located within the range of permissible decisions." *Miller v. Eldridge*, 146 S.W.3d 909, 915 n.11 (Ky. 2004) (emphasis omitted).

Our review is limited to the issue of certification. Consequently, our consideration does not include the merits of the actual claims. *Hensley*, 549 S.W.3d at 437. If the Trial Court's reasoning is rational and confined to the parameters of the requirements for certification of a class, its decision will not be disturbed. *Id.* at 444.

## III.   General Rules of Law for Class-Action Certification

A class action is "[a] lawsuit in which the court authorizes a single person or a small group of people to represent the interests of a larger group." *Id.* at 442 (quoting *Class Action*, BLACK'S LAW DICTIONARY (10th ed. 2014)).  In *Hensley*, *supra*, the Kentucky Supreme Court held that, since the provisions of CR 23.01 and CR 23.02 are substantially similar to their Federal counterparts, our interpretation of the state rules should mirror that of the Federal rules.  *Hensley*, 549 S.W.3d at 436.  Thus, the Court in *Hensley* was guided by the holding of the United States Supreme Court in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011).  In that case, the United States Supreme Court held that, because class actions are exceptions to the usual rule that litigation is to be conducted by individually-named parties only, certification is proper only if the trial court is satisfied, after a "rigorous analysis," that the prerequisites of CR 23.01 have been satisfied.  *Id.* at 350-51, 131 S. Ct. at 2551.  Those prerequisites are as follows:

> Subject to the provisions of Rule 23.02, one or more members of a class may sue or be sued as representative parties on behalf of all only if (a) the class is so numerous that joinder of all members is impracticable, (b) there are questions of law or fact common to the class, (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (d) the representative parties will fairly and adequately protect the interests of the class.

CR 23.01.

As mentioned earlier in this Opinion, these four requirements are summarized by the terms numerosity, commonality, typicality, and adequacy of representation. The Trial Court found, and the parties agree, that the numerosity and typicality requirements are satisfied with respect to the proposed subclasses.

In addition to satisfying the requirements of CR 23.01, a party seeking to maintain a class action must satisfy the requirements of CR 23.02, which provides as follows:

> An action may be maintained as a class action if the prerequisites of Rule 23.01 are satisfied, and in addition:
> (a) The prosecution of separate actions by or against individual members of the class would create a risk of
>
> > (i) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or,
> >
> > (ii) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
>
> (b) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(c) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (i) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (iv) the difficulties likely to be encountered in the management of a class action.

## IV.   Retiree Appeals

### A. Commonality/Predominance

In their direct appeals, the Retirees do not challenge the Trial Court's findings regarding the requirements of CR 23.01. Rather, they dispute the Trial Court's denial of certification for the proposed damages subclasses based on the additional factors set forth in CR 23.02. First, the Retirees argue that the Trial Court failed to address the commonality analysis properly. With respect to this question, the United States Supreme Court in *Dukes* further held that the "common contention, moreover, must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350, 131 S. Ct. at 2551.

The Retirees contend that the Trial Court erred by engaging in the commonality analysis under CR 23.02 after it had already found commonality under CR 23.01. However, as noted above, CR 23.01 specifically provides that its analysis of the factors is "subject to" the provisions of CR 23.02. And CR 23.02 specifies that its factors are "in addition" to the requirements of CR 23.01. Thus, the analysis under each section is not exclusive, but rather complementary to each other.

The Retirees note that the common issue is whether the Commonwealth breached the inviolable-contract provision of KRS 78.852(1). The Retirees' other constitutional and contract claims flow from this assertion. We agree with the Retirees that common questions of law and fact permeate the declaratory and injunctive subclasses. The Retirees further argue that the liability issues in their declaratory and injunctive claims are primary and subsume the damages claims. As a result, they maintain that the Trial Court's findings supporting certification of class-action status with respect to those claims must be applied to all of the subclasses, including the damages claims.

Nevertheless, the Retirees are requesting separate certification of the damages subclasses. Moreover, the Retirees' damages claims involve distinct issues and require distinct proof from that necessary to prove their claims for

declaratory and injunctive relief.  Consequently, the Trial Court was required to

conduct this damages analysis under CR 23.01 and CR 23.02 separately.

Under CR 23.02(c), the Retirees were required to establish that "the

questions of law or fact common to the members of the class predominate over any

questions affecting only individual members[.]"  The purpose of the predominance

requirement is to test whether a proposed class is "sufficiently cohesive to warrant

adjudication by representation."  *Manning v. Liberty Tire Servs. of Ohio, L.L.C.*,

577 S.W.3d 102, 116 (Ky. App. 2019) (quoting *Amchem Prods., Inc. v. Windsor*,

521 U.S. 591, 594, 117 S. Ct. 2231, 2236, 138 L. Ed. 2d 689 (1997)).  As further

explained in *Manning*,

> "This, in turn, entails identifying the substantive issues
> that will control the outcome, assessing which issues will
> predominate, and then determining whether the issues are
> common to the class[.]"  *Bell Atl. Corp. v. AT & T Corp.*,
> 339 F.3d 294, 302 (5th Cir. 2003) (quotation marks and
> citation omitted).  The predominance inquiry is intended
> to prevent mini-trials within the class action and the
> adjudication of classwide claims with individual
> determinations requiring individualized proof.  *Rodney v.
> NW. Airlines, Inc.*, 146 F. App'x 783, 792 (6th Cir.
> 2005).  Class-wide issues predominate if resolution of
> some of the legal or factual questions for class-wide
> resolution can be achieved using generalized proof, and if
> these particular issues are more substantial than those
> requiring individualized proof.  *Thacker v. Chesapeake
> Appalachia, L.L.C.*, 259 F.R.D. 262, 268 (E.D. Ky.
> 2009).  In other words, the predominance element is
> lacking where issues idiosyncratic to the claims of
> individual class members would detract from the benefit
> of a conglomerate approach.  That determination must be

within the non-abusive exercise of the circuit court's discretion.

*Id.* at 116. *See also Nebraska Alliance Realty Co. v. Brewer*, 529 S.W.3d 307, 312-13 (Ky. App. 2017).

The Trial Court held that the Retirees failed to identify elements of their proffered damage claims that might be susceptible to class-wide proof. Similarly, the Trial Court held that the Retirees failed to show that each larger claim presents issues susceptible to common proof. The Trial Court specifically noted that the "alternate premiums" subclass would require distinct proof as to each retiree's cost of joining an alternate Medicare Advantage Plan. Along the same lines, the Trial Court noted that the "re-employment" subclasses would require distinct proof from each retiree not only as to this question, but also relating to the cost of giving up full-time work to retain the no-cost health coverage. The Trial Court concluded as follows:

> [R]esolution of the scope of costs for the respective damages subclasses requires distinct proof of the price of the coverage for the "alternate premiums" subclass; while calculating the costs for the "reemployment" subclass on the sole issue of forgoing full-time re-employment would require highly individualized fact finding on the scope of missed wages. For the "re-employment" damages subclass, the issue of calculating the sacrificed wages for each individual does not require common proof but distinct, individualized evidence.

*Order Granting Class Certification for Declaratory and Injunctive Relief and Denying Class Certification for Damages* ("Certification Order"), June 25, 2024, pp. 13-14, Record on Appeal ("ROA") at 504-05.

The mere fact that questions peculiar to each individual member of the class action remain after the common questions of a defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible. *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988). The controlling inquiry concerns "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the inquiry." *Dukes*, 564 U.S. at 350, 131 S. Ct. at 2551 (emphasis in original).

The Retirees maintain that the formula for damages will follow directly once they prove the Pensions Authority's liability for breach of the inviolable contract. Thus, even where there are individual variations in damages, the Retirees assert that the predominance requirement of CR 23.02(c) can be satisfied if they can establish the underlying injury. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008).

However, this position is undermined by the Trial Court's additional finding that the Retirees failed to satisfy the adequacy-of-representation element of CR 23.01(d). The Trial Court found that the proposed hazardous and non-hazardous-duty classes are represented by qualified and experienced counsel. But

with respect to the damages subclasses, the Trial Court found that "there are potential conflicts between the named class representatives and the unnamed members sufficient to raise questions as to the Plaintiffs' adequacy of representation[.]" The Trial Court continued:

> The Defendant persuasively argues the depositions of the putative class representatives reveal divergent views on the specific claims being brought and the elements compromising those claims. To wit, the depositions reveal that some class representatives seek lost wages from foregone income, others only seek reimbursement for Part B expenses, while some attempt to recoup more expensive co-pays and deductibles, and at least one seeks relief for every out-of-pocket medical expense incurred since retirement. The depositions of the proposed class representatives show the existence of rather discrete, individualized scopes of damages.

Certification Order, p. 15, ROA at 506 (citations omitted).

The Trial Court's analysis on this point supports its conclusion that the Retirees failed to show a common nucleus of operative facts sufficient to calculate damages generally exists among members of each subclass. *See Wiley v. Adkins*, 48 S.W.3d 20, 23 (Ky. 2001). Rather, once the Retirees establish the underlying basis for liability, each member will still be required to present highly-individualized evidence to prove damages. Thus, the proof necessary to calculate individual damages will necessarily be distinct. Therefore, we find no clear error or abuse of discretion in the Trial Court's finding that the Retirees failed to establish predominance as to the damages subclasses.

-21-

*B. Superiority*

The Retirees further argue that the Trial Court failed to analyze properly the superiority requirement of CR 23.02(c), which requires a party to show that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." CR 23.02(c) sets out four factors for the Trial Court to consider in deciding whether a class action is the superior method of adjudication.

In this case, the Trial Court found that the Retirees failed to establish the first and fourth factors with respect to the damages subclasses. First, the Trial Court found that the members of the proposed subclasses do not have a strong interest in controlling the prosecution or defense of the separate actions. Similarly, the Trial Court found "too many difficulties" that were likely to be encountered in the management of the damages subclasses. Certification Order, p. 20, ROA at 511. In its analysis of both factors, the Trial Court again pointed out that the proposed members of the subclasses have "wildly variant views on the nature and scope of their damages." *Id.* at p. 19, ROA at 510. In addition, the Trial Court noted that the members failed to demonstrate a consistent method of calculating damages among members of the subclasses.

As with the Trial Court's predominance analysis, we find no clear error or abuse of discretion in its superiority analysis. A class action is not a

superior form of adjudication where many individual inquiries are necessary. *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 464 (6th Cir. 2020). Although the Retirees have identified a single course of allegedly wrongful conduct to support their claims for declaratory and injunctive relief, there are simply too many variations in the nature and type of damages to demonstrate that a class action would be the superior method of adjudicating those claims. And, as Retirees noted at oral argument, while the Trial Court could have appointed a special master to handle all of these disparate damages claims, there is no requirement that it do so. And there is no indication that such an approach would be superior, even where individuals possess the ability to "opt out," as counsel noted. Consequently, we find no abuse of discretion or other basis to disturb the Trial Court's conclusion on this point.

### C. Adequacy of Representation

Furthermore, the party seeking certification bears the burden of proof on all elements of CR 23.01 and CR 23.02. *Manning*, 577 S.W.3d at 110. As noted above, the Trial Court expressly found that the Retirees failed to establish the adequacy-of-representation element of CR 23.01(d) with respect to the damages subclasses. Certification Order, p. 15-16, ROA at 506-07. However, neither the FOP parties nor Cook directly challenges the Trial Court's finding on

-23-

this point. The Pensions Authority argues that the Retirees have waived any challenge to the Trial Court's ruling on this issue.

We agree with the Pensions Authority that the Trial Court's holding that the Retirees failed to establish the adequacy-of-representation element could preclude certification of the damages subclasses. During oral argument, however, counsel for the Retirees pointed to the Trial Court's conclusion that "both sets of Plaintiff's counsel are aptly qualified to provide adequate representation should the [declaratory and injunctive] classes be certified." Certification Order, p. 14, ROA at 505. Accordingly, the Retirees' counsel orally asserted that they were nonetheless not required to appeal specifically the adequacy-of-representation element. They believed that they had won the issue because class certification was achieved on the issue of the alleged injury, albeit not on the legal damages claimed for that injury.

We note that, as the Appellants in this matter, the Retirees are required to identify issues raised on appeal in their prehearing statement. RAP 22(C)(1)(h). That requirement is not a mere formality because RAP 22(C)(2) states that "[a] party shall be limited on appeal to issues identified in the prehearing statement, except that upon a timely motion demonstrating good cause, the Court of Appeals may permit additional issues to be raised." Furthermore, the Appellants' brief must include:

ample references to the specific location in the record and citations of authority pertinent to each issue of law and which shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner.

RAP 32(A)(4).

As a general rule, an appellant's failure to comply with these rules would amount to a waiver of the issue. *See Gasaway v. Commonwealth*, 671 S.W.3d 298, 314 (Ky. 2023). Likewise, the Retirees' failure to address an issue in their brief would constitute a waiver of that issue. *See CSX Transp., Inc. v. Moody*, 313 S.W.3d 72, 88 (Ky. 2010). However, we need not determine whether the Retirees' failure to preserve or address the issue amounts to a waiver in this case.

At oral argument, the Retirees essentially reiterated their previously-stated position that the issues relating to their declaratory and injunctive claims are primary, thus obviating the need for the Trial Court to make separate findings on the CR 23.01 and CR 23.02 factors with respect to the adequacy of representation regarding their damages claims. But as we have discussed *supra*, the damages claims present distinct issues from the declaratory and injunctive claims and require a separate analysis of the applicable factors. Therefore, the Trial Court could reasonably determine that the Retirees met the adequacy-of-representation element with respect to the declaratory and injunctive claims but not the damages claims. Because the Retirees have failed to preserve or discuss the Trial Court's

substantive findings regarding adequacy of representation, we decline to address the issue further.

## V.  Pensions Authority Cross-Appeals

In the cross-appeals, the Pensions Authority challenges the Trial Court's certification of the subclasses for declaratory and injunctive relief.  The Pensions Authority does not challenge the Trial Court's findings under the requirements of CR 23.01.  Rather, it disputes the sufficiency of the class definitions and superiority of class action adjudication under CR 23.02.

### A. Subclass Definitions

The Pensions Authority first argues that the subclass definitions for declaratory and injunctive relief are unworkable.  We disagree.  The subclass definitions identify with specificity both who is and who is not included.[3]  Unlike

---

[3] The Trial Court's August 19, 2024, Amended Order set forth the definitions for the hazardous-duty and non-hazardous-duty classes as follows:

> Each Hazardous duty member of the County Employees Retirement System ("CERS") who (i) began participating in CERS prior to January 1, 2014, and (ii) has earned, or will earn at least two hundred forty (240) months of service in Kentucky state-administered retirement systems, and each dependent of such member, whose no-cost group health insurance, provided as a CERS retirement benefit, has been, or may be, terminated by the Defendants, in whole or in part, because of the member's or dependent's eligibility for Medicare, provided that the member is not shown to be disqualified pursuant to KRS 6.696.

> Each Nonhazardous duty member of the County Employees Retirement System ("CERS") who (i) began participating in CERS prior to January 1, 2014, and (ii) has earned, or will earn at least

the damages claims, the inviolable-contract claims asserted by each of these subclasses involve common issues and can be resolved using generalized proof. And there is no showing that the individual members of each subclass would be entitled to different declaratory or injunctive relief. *Dukes*, 564 U.S. at 360, 131 S. Ct. at 2257.

Along the same lines, the Pensions Authority also alleges that the subclass definitions amounted to an improper fail-safe class. As noted in *Hensley*, a "fail-safe" class is one that predicates inclusion on the ultimate finding of liability that a court must make. *Hensley*, 549 S.W.3d at 449. Such a definition is improper because it "shields the putative class members from receiving an adverse judgment. Either the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment." *Id.* (quoting *Randleman v. Fidelity Nat. Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011)).

---

two hundred forty (240) months of service in Kentucky state-administered retirement systems, whose no-cost group health insurance, provided as a CERS retirement benefit, has been, or may be terminated by the Defendants, in whole or in part, because of the member's eligibility for Medicare, provided that the member is not shown to be disqualified pursuant to KRS 6.696.

*Order Granting Motion to Amend Opinion and Order of June 25, 2024, to Include Description of CR 23.02(B) Class Members and Appointment of Counsel*, ("Amended Order"), August 19, 2024, pp. 2-3, ROA at 1777-78.

The Pensions Authority focuses on the portion of the class definitions identifying members "whose *no-cost group health insurance*, provided as a CERS retirement benefit, has been, or may be terminated by the Defendants." Amended Order, p. 2, ROA at 1777 (emphasis added). The Pensions Authority contends that the inclusion of the "no-cost group health insurance" language goes to the merits question involving the scope of the Retirees' statutory entitlement. Thus, the Pensions Authority argues that the definitions amount to a fail-safe class insofar as it would exclude members of the proposed classes upon a determination that they are not entitled to no-cost group health insurance.

We disagree. In this case, unlike in *Randleman*, *supra*, the declaratory and injunctive subclass definitions do not impermissibly preclude membership unless the liability of the Pensions Authority is established. *Randleman*, 646 F.3d at 352. Rather, the subclasses are defined by the vested rights accrued by hazardous and non-hazardous-duty retirees. As noted above, membership is defined by dates of participation in the CERS, service credits accrued, and eligibility for Medicare.

The parties agree that qualifying Retirees, and spouses and dependents under certain circumstances, are statutorily entitled to participate in group health-insurance coverage at the same, state-provided contribution rate as an active member. Indeed, the Federal District Court concluded that "Kentucky promised

-28-

[the Retirees] health insurance coverage at no cost." *River City FOP v. Ky. Ret. Sys.*, 375 F. Supp. 3d at 770. On the merits, there may be a question of whether that statutory entitlement may be characterized as "no-cost group health insurance," or if Retirees remain subject to some costs as part of that coverage. But ultimately, that determination will go to the Retirees' entitlement to relief and not whether they can be properly included as members of the applicable subclasses. Consequently, the declaratory and injunctive subclasses are not "fail safe."

*B. Necessity*

The Pensions Authority argues that certification of the declaratory and injunctive subclasses is unnecessary and does not advance the interests of the class. In support of this position, the Pensions Authority cites to Federal cases holding that class-action certification is unnecessary where plaintiffs only seek to require a governmental actor to comply with statutory obligations. *See, e.g.*, *Clemons v. Norton Healthcare Inc. Ret. Plan*, 890 F.3d 254, 280 (6th Cir. 2018); *Pipefitters Loc. 636 Ins. Fund v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 633 (6th Cir. 2011); and *Monteleone v. The Auto Club Grp.*, 113 F. Supp. 3d 950, 960-61 (E.D. Mich. 2015). Since the Retirees only seek to require it to comply with the inviolable-contract requirements of KRS 78.852(1), the Pensions Authority asserts

that the benefit of any ruling on this issue would inure to the benefit of all eligible retirees regardless of class certification.

However, this consideration must be read in conjunction with the broader analysis under CR 23.02(a)(i) & (ii). These sections permit certification when separate actions would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class," CR 23.02(a)(i), or "adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests[.]" CR 23.02(a)(ii). These sections include cases involving a party who is obliged by law to treat the members of the class alike, or where the party must treat all alike as a matter of practical necessity. *Windsor*, 521 U.S. at 614, 117 S. Ct. at 2245.

In this case, the members of the declaratory and injunctive subclasses assert the same claims involving the Pensions Authority's policy, now adopted by statute. Prior to the adoption of the policy in 2014, vested retirees in the CERS were entitled to state-provided health insurance throughout their retirement. Since 2015, vested retirees are now terminated from their state-provided health insurance and required to enroll in Medicare upon reaching age 65. As the Federal Court

held in the FOP case, this change implicates the Retirees' rights under the inviolable-contract provision of KRS 78.852(1). *River City FOP*, 375 F. Supp. 3d at 770.

The underlying issue to be resolved is whether this impairment is permissible as a legitimate exercise of the Commonwealth's sovereign powers. The Pensions Authority may also seek to establish that the Retirees have not been injured as a result of this change because they will receive the same coverage from Medicare and at a similar total cost. Given that the same issues apply to all members of the declaratory and injunctive subclasses, any adjudication of these issues would be dispositive of the interests of all similarly-situated retirees. CR 23.02(a)(ii). Indeed, a class-wide proceeding will generate common *answers* apt to drive the resolution of these inquiries. *Dukes*, 564 U.S. at 350, 131 S. Ct. at 2551. On the other hand, denial of class-action certification would require multiple adjudications, creating a risk of inconsistent or varying rulings among similarly-situated retirees. CR 23.02(a)(i). Thus, the mere fact that the benefits could inure to the benefit of eligible non-parties does not preclude class certification.

## VI. Conclusion

As discussed above, our review at this phase is confined to the Trial Court's decisions whether to certify the proposed subclasses as separate class

actions.  We must emphasize that we are neither considering nor ruling upon the merits of the disputes.

The Retirees bore the burden of establishing the requirements of CR 23.01 and 23.02 to maintain class actions as to all of their claims.  Here, the Trial Court conducted the required, rigorous analysis on these factors.  *Id.* at 351, 131 S. Ct. at 2551.  The Trial Court concluded that the Retirees met their burden to sustain class action with respect to the declaratory and injunctive claims, but not as to the disparate damages claims.

We find no basis to disturb these conclusions, as the high bar of abuse of discretion was not met.  The Trial Court properly addressed the applicable factors as to class-action status for the declaratory and injunctive claims and then again separately as to the damages claims.  On the proposed damages subclasses, the Retirees failed to establish that common issues predominate such that would allow a consistent standard of proof to calculate damages among members of each subclass.  For the same reasons, we agree with the Trial Court that the Retirees failed to show that class-action adjudication would be the superior method of adjudicating the damages claims.  In addition, the Retirees do not challenge the sufficiency of the Trial Court's findings regarding adequacy of representation, either with respect to the declaratory and injunctive claims or the separate damages

claims. Consequently, the Trial Court did not abuse its discretion by denying certification of the damages subclasses.

In the cross-appeals, we conclude that the proposed subclasses for declaratory and injunctive relief are neither unworkable nor improper. Rather, the subclasses may be reasonably defined without reference to the ultimate outcome of this litigation. And finally, the Pensions Authority has failed to show that the Trial Court erred in rejecting its claims that certification is unnecessary. Thus, we also conclude that the Trial Court did not abuse its discretion by granting class certification of the declaratory and injunctive relief subclasses.

Accordingly, in the above-styled appeals and cross-appeals, we affirm the Franklin Circuit Court's July 25, 2024, Certification Order, as amended by its August 19, 2024, Order, as to the rulings on the issues of class certification.

ALL CONCUR.

BRIEFS FOR APPELLANTS/CROSS-APPELLEES KENTUCKY STATE LODGE FRATERNAL ORDER OF POLICE; CARL "CORKY" PARKER; DARRELL S. AMMON; DAVE HERRMAN; GEORGE RUSSELL; MICHAEL J. LORAN; PAUL EUGENE WEAVER; RAYMOND SPANN; AND RIVER CITY FRATERNAL ORDER OF POLICE LODGE 614, INC.:

David Leightty
Louisville, Kentucky

Stephen D. Wolnitzek
Aaron A. Vanderlaan
Covington, Kentucky

BRIEFS FOR APPELLANT/CROSS-APPELLEE LINDA COOK:

Stephen D. Wolnitzek
Aaron A. Vanderlaan
Covington, Kentucky

ORAL ARGUMENTS FOR APPELLANTS/CROSS-APPELLEES:

Aaron A. Vanderlaan
Covington, Kentucky

BRIEFS FOR APPELLEES/CROSS-APPELLANTS KENTUCKY PUBLIC PENSION AUTHORITY AND COUNTY EMPLOYEES RETIREMENT SYSTEM:

Peter M. Cummins
Jason Renzelmann
J. Austin Hatfield
Louisville, Kentucky

William E. Johnson
W. Eric Branco
Frankfort, Kentucky

ORAL ARGUMENTS FOR APPELLEES/CROSS-APPELLANTS:

Jason Renzelmann
Louisville, Kentucky